BY LO OIL COMPANY v DEPARTMENT OF TREASURY

Docket Nos. 251200, 251201. Submitted April 14, 2005, at Lansing.
 Decided May 10, 2005. Approved for publication June 21, 2005, at
 9:10 a.m.

By Lo Oil Company brought an action in the St. Clair Circuit Court
 against the Department of Treasury and three of its employees,
 seeking damages for violations of By Lo's federal and state
 constitutional rights, challenging the constitutionality of certain
 portions of MCL 207.122 of the former motor fuels tax act, the use
 by the department of Revenue Administrative Bulletin 1991-12
 (RAB 91-12) to impose tax liability on taxpayers, and the sampling
 system used in an audit of the plaintiff, and seeking an injunction
 against the department. Venue for the action was later changed to
 the Ingham Circuit Court.

By Lo Oil Company also brought an action in the Court of Claims
 against the department, seeking similar relief, plus a refund of
 taxes paid under protest. The circuit court action and the Court of
 Claims action were consolidated before James R. Giddings, J., who
 granted summary disposition for the defendants and dismissed
 both actions. The plaintiff appealed in each case, and the appeals
 were consolidated.

The Court of Appeals held:

1. The trial court correctly determined that even if the employees
 of the department and the department had violated state law, those
 violations would not constitute violations of the plaintiff's federal due
 process rights. The employees would not be liable under 42 USC 1983
 for violation of the plaintiff's federal rights under color of state law.
 The plaintiff received due process, i.e., notice and an opportunity to
 be heard at a meaningful time and in a meaningful manner. Remedies
 relating to the periods before and after the alleged deprivation of
 rights were available to the plaintiff. A violation of a right created and
 recognized only under state law is not actionable under 42 USC 1983.
 There being no federal constitutional violation, dismissal of the 42
 USC 1983 claims against the individual defendants relative to the
 actions of those employees was also proper on the ground of qualified
 immunity.

2. The trial court correctly ruled that the plaintiff failed to
 state a claim for which relief could be granted with respect to the

department's alleged failure to accord the plaintiff with state procedural due process. Const 1963, art 1, § 17. The statutory scheme accords constitutional due process. The plaintiff did not allege that it was, in fact, denied notice or an opportunity to be heard at a meaningful time and in a meaningful manner.

3. The Legislature provided the department with constitutionally sufficient standards to guide the department's exercise of delegated discretion with regard to the required preservation of certain invoice information. The department determined the information a retail seller of diesel motor fuel products needed to maintain to qualify for a discount of six cents a gallon pursuant to MCL 207.122(2), and provided the invoice record keeping requirements in RAB 91.12. The trial court did not err by ruling that the plaintiff failed to state a claim for injunctive or declaratory relief on the basis of a violation of state substantive due process.

4. Const 1963, art 1, § 17 requires fair and just treatment of individuals, firms, corporations, and voluntary associations in the course of legislative and executive investigations and hearings. The trial court correctly determined that, because the audit was not a legislative or executive investigation or hearing, the plaintiff's "fair and just treatment" claim failed. The plaintiff does not have the right to choose the audit method to be employed by the department. Although there may be better methods than "block sampling," the plaintiff failed to demonstrate that, as a factual matter, any unfairness or injustice occurred.

5. MCL 207.122(2) required the department to prescribe the invoice necessitated by that statute. The department did so in RAB 91-12. There is no need for the department to comply with the rule-making procedures of the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, in establishing the invoice required by the statute. The Legislature, not RAB 91-12, established the requirement of the invoice, thus excepting the RAB from the strictures of the APA under MCL 24.207(j). RAB 91-12 also comes within the ambit of MCL 24.207(h), which is the interpretative guideline exception to rule-making under the APA. The department did not need to comply with the rule-making procedures of the APA before adopting RAB 91.12 to prescribe the invoice required by MCL 207.122(2).

6. The department's determination that the statute's requirement of prepayment of the sales tax to the supplier at the time of purchase or shipment, MCL 205.56a(1), is not arbitrary, capricious, or unlawful. The plaintiff argued that the time of purchase was the time that the plaintiff paid the supplier's invoice using a cash

basis accounting system. The statute implicitly requires an accrual basis accounting system for the prepayment credit under the statute. A sale is a transaction by which the ownership of tangible personalty is transferred for consideration. The word "purchase" in the statute is considerably broader than merely the time of paying cash for a good. The purchase takes place when one acquires possession of or legal or equitable title to the fuel, regardless of when the payment is actually made to the fuel supplier. The department's longstanding, consistent interpretation of a statute within its responsibility to enforce is entitled to great weight. The department's interpretation has not been shown to be clearly erroneous, that is, it is not overcome by the statute's plain meaning.

Affirmed.

1. CONSTITUTIONAL LAW — DUE PROCESS — STATE-GRANTED RIGHTS — 42 USC 1983.

The violation of a right created and recognized only under state law is not actionable as a violation of federal due process rights under 42 USC 1983; claims against state employees on the basis of the violation state law or rules are also not actionable as violations of federal due process rights (US Const, Am V and Am XIV).

2. CONSTITUTIONAL LAW — DUE PROCESS — OTHER REMEDIES.

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

3. CONSTITUTIONAL LAW — SUBSTANTIVE DUE PROCESS — STANDARDS — ADMINISTRATIVE LAW — LEGISLATIVE DELEGATION.

A requirement of substantive due process is the existence of reasonably precise standards to be utilized by administrative agencies in the performance of delegated legislative tasks; where reasonably precise standards are provided by the Legislature, there is no need for an administrative agency to submit to the rule-making procedures of the Administrative Procedures Act; if the agency distributes interpretative guidelines, those guidelines are also exempt from the rule-making procedures of the Administrative Procedures Act (MCL 24.207[7][h], [j]).

*Clark Hill PLC* (by *Ronald A. King*) for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Ross H. Bishop*, Assistant Attorney General, for the defendants.

Before: MURRAY, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM. These consolidated cases arise out of an audit by the Department of Treasury of plaintiff's records and subsequent assessment of taxes under the General Sales Tax Act (GSTA), MCL 205.51 *et seq.*, and the former motor fuel tax act (MFTA), MCL 207.101 *et seq.* Plaintiff distributes and sells at retail gasoline and diesel fuel in St. Clair County and other eastern Michigan counties. Rex Pierce supervised and David Wagg conducted the audit, which began in May 1996. The audit culminated in the department issuing orders of determination on April 15, 1999. One order finalized a deficiency assessment for diesel motor fuel tax and interest of $46,249.22 for the period of January 1994 to the end of September 1996. Another order finalized an adjusted deficiency assessment for sales tax of $4,714 for the period of February 1994 through September 1996. Plaintiff paid these assessments under protest and commenced these proceedings. The trial court granted summary disposition for defendants, dismissing all of plaintiff's claims for tax refunds in the Court of Claims and for damages as well as declaratory and injunctive relief in the circuit court. Plaintiff appeals by right. We affirm.

### I. SUMMARY OF FACTS AND PROCEEDINGS

Plaintiff filed a complaint in the St. Clair Circuit Court on July 1, 1999, seeking declaratory and equitable relief. Plaintiff also sought money damages and injunctive relief, alleging that Pierce and Wagg violated 42 USC 1983 (count I) by denying plaintiff its right to due process under the Fifth Amendment and the Fourteenth Amendment. Plaintiff further alleged (count II) that it was deprived of property without due process of

law as guaranteed by Const 1963, art 1, § 17. In addition, plaintiff asserted in count II that defendants' conduct during the audit, the department's enforcement of its Revenue Administrative Bulletin 1991-12 (RAB 91-12), and the use of a "block sampling" auditing procedure, deprived it of "fair and just treatment," for which plaintiff sought injunctive and "other relief." Plaintiff also sought declaratory and injunctive relief in counts III, IV, and V. It asserted that § 22 of the MFTA, MCL 207.122[1] was unconstitutionally vague and unlawfully delegated to the department the authority to specify necessary requirements for invoices that § 22 mandated for diesel fuel sales. Plaintiff also claimed that because RAB 91-12 was not adopted pursuant to the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, it was unenforceable. In addition, plaintiff contended that the department's use of "block sampling" to determine an error rate to apply to plaintiff's tax returns over the entire audit period was not "fair and just treatment" and was in violation of Const 1963, art 1, § 17.

On July 13, 1999, plaintiff filed a suit in the Court of Claims in which it sought a refund of taxes, interest, and penalties it had paid under protest. Plaintiff asserted the same arguments it raised in the circuit court case. Specifically, plaintiff again alleged that § 22 of the MFTA did not provide reasonably precise standards and therefore unlawfully delegated legislative authority to the department; that the application of RAB 91-12 was unfair, unjust and unlawful; and that the department's use of the "block sampling" technique was also unfair, unjust, and unlawful. Plaintiff added a claim that the department interpreted § 6a of the GSTA, MCL 205.56a

---

[1] 2000 PA 403, MCL 207.1169, repealed this section and all of the MFTA, effective April 1, 2001.

(regarding prepayment credits) in an arbitrary, capricious, and, therefore, unlawful manner.

After a series of motions in each court, and after appeals to this Court,[2] plaintiff's circuit court action was transferred by an order changing venue to the Ingham Circuit Court, where it was heard with the Court of Claims action. Defendants subsequently moved for summary disposition in each case under MCR 2.116(C)(4), (7), (8) and (10); the trial court granted the motions and dismissed all of plaintiff's claims in each case.

The trial court ruled with respect to the circuit court action that plaintiff had failed to plead a valid claim for damages and injunctive relief pursuant to 42 USC 1983 against the individual defendants for alleged violations of federal due process; that plaintiff had failed to plead a valid claim against defendants for injunctive relief for alleged violations of state due process rights under Const 1963, art 1, § 17; that § 22 of the MFTA does not unlawfully delegate authority to the department contrary to state due process of law requirements and the separation of state governmental power doctrine; that § 22 of the MFTA directly authorized the department's adoption and enforcement of RAB 91-12 so that compliance with rule promulgation requirements of the APA was unnecessary; that the auditing method used by the department was fully authorized by the GSTA and not in violation of state due process rights; and that plaintiff failed to plead a valid claim for declaratory relief by alleging that § 22(2) of the MFTA, the RAB 91-12, and the "block sampling" auditing method were unlawful and unenforceable.

---

[2] See unpublished opinion per curiam issued May 22, 2001 (Docket No. 230731), and unpublished order, entered June 6, 2001 (Docket No. 232733).

In the Court of Claims action for a refund, the trial court ruled that plaintiff failed to state a valid claim because § 22 of the MFTA was a constitutional delegation of legislative authority to the department; that RAB 91-12 was not an unlawful enforcement of § 22; that the "block sampling" audit method did not unconstitutionally deprive plaintiff of state due process rights; and that the department's interpretation of the "prepayment credit" provisions in § 6a of the GSTA was neither arbitrary nor capricious but, in fact, was consistent with and thus authorized by the statute.

## II. STANDARD OF REVIEW

The interpretation, application, and constitutionality of statutes are questions of law that this Court reviews de novo. *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003); *Tolksdorf v Griffith*, 464 Mich 1, 5; 626 NW2d 163 (2001). We also review de novo issues of constitutional construction and a trial court's ruling on a motion for summary disposition. *Carmacks Collision, Inc v Detroit*, 262 Mich App 207, 209; 684 NW2d 910 (2004).

The trial court dismissed plaintiff's claims under MCR 2.116(C)(7), (8), and (10).[3] A motion for summary disposition under MCR 2.116(C)(7) asserts that a claim is barred by immunity granted by law; a C(8) motion asserts that the pleading fails to state a claim on which relief can be granted, and summary disposition under C(10) is proper where there is no genuine issue of material fact and a party is entitled to judgment as a matter of law.

---

[3] This Court will affirm the lower court decision when that lower court reaches the correct result even if it does so for the wrong reason. *Wickings v Arctic Enterprises, Inc*, 244 Mich App 125, 150; 624 NW2d 197 (2000); *Webb v First of Michigan Corp*, 195 Mich App 470, 472; 491 NW2d 851 (1992).

A motion under MCR 2.116(C)(7) may be supported or opposed by affidavits, depositions, admissions, or other documentary evidence; the substance or content of the supporting proofs must be admissible in evidence. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The allegations of the complaint are accepted as true unless contradicted by documentary submissions. *Id.*, citing *Patterson v Kleiman*, 447 Mich 429, 434 n 6; 526 NW2d 879 (1994). A trial court properly grants a motion for summary disposition under MCR 2.116(C)(7) when the undisputed facts establish that the moving party is entitled to immunity granted by law. *Poppen v Tovey*, 256 Mich App 351, 354; 664 NW2d 269 (2003); MCR 2.116(I)(1).

A motion brought under MCR 2.116(C)(8) tests the factual sufficiency of the complaint on the basis of the pleadings alone. MCR 2.116(G)(5); *Corley v Detroit Bd of Ed*, 470 Mich 274, 277; 681 NW2d 342 (2004). The trial court must grant the defendant's motion if no factual development could justify the asserted claim for relief. *Id.*; *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

A C(10) motion tests the factual sufficiency of a complaint and must be supported by affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3)(b); *Corley, supra* at 278. The moving party must specifically identify the undisputed factual issues and support its position with documentary evidence. MCR 2.116(G)(4); *Smith v Globe Life Ins Co*, 460 Mich 446, 455; 597 NW2d 28 (1999). The trial court is required to consider the submitted documentary evidence in the light most favorable to the party opposing the motion. *Corley, supra* at 278. If the moving party satisfies its burden of production, the motion is properly granted if the opposing party fails to proffer legally

admissible evidence that demonstrates that a genuine issue of material fact remains for trial. *Maiden, supra* at 120-121.

### III. DOCKET NO. 251201

We begin by reviewing the trial court's rulings with respect to plaintiff's circuit court case for two reasons. First, that is the order in which the trial court proceeded. Second, plaintiff's circuit court case raises almost all the same issues that plaintiff asserts in its Court of Claims complaint as a basis for a refund and it names all defendants.

#### A. 42 USC 1983

Plaintiff claims that the individual defendants violated state law and regulations governing the department's conduct when auditing taxpayers and, therefore, they violated its federal right to due process of law. On this basis, plaintiff asserts that the individual defendants are liable pursuant to 42 USC 1983 for violating its federal rights under color of state law. Specifically, plaintiff alleges that the individual defendants violated its right to due process of law by failing to provide plaintiff a Taxpayers Rights Handbook,[4] being "visibly unhappy" and expressing dissatisfaction while abiding plaintiff's request that the audit be conducted through and at the office of plaintiff's accountant, failing to keep plaintiff or its accountant apprised of the audit's progress, pressuring plaintiff to execute a waiver of the period of limitations to permit review of the audit results before the department issued its formal notice of intent to assess,[5] and initially determining an amount

---

[4] See MCL 205.4 and 205.5.

[5] See MCL 205.21(2)(b) and 205.27a(3).

of claimed tax deficiencies that contained errors.[6] Plaintiff does not allege that it lacked notice or an opportunity for a meaningful hearing, and plaintiff does not contest that both predeprivation and postdeprivation remedies were available to it.

The trial court rejected plaintiff's contention that allegations of noncompliance with state laws and regulations, standing alone, can support a federal claim of deprivation of property without due process of law. Noting that plaintiff failed to support its position with authority, the trial court quoted *Harrill v Blount Co, Tennessee*, 55 F3d 1123, 1125 (CA 6, 1995): "A state statute cannot 'create' a federal constitutional right." In *Harrill*, the plaintiff sued police officers after being found not guilty on a charge of concealing stolen property. The *Harrill* court recognized that state law may create a liberty or property interest protected by the Due Process Clause, but a "violation of a right created and recognized only under state law is not actionable under § 1983." *Id.*, citing *Sweeton v Brown*, 27 F3d 1162, 1165 (CA 6, 1994) (en banc). "If states could vary . . . federal constitutional rights by statute or local ordinance, the federal constitutional law . . . would vary from state to state and from city to city." *Harrill, supra* at 1125. Thus, principles of federalism discourage constitutionalizing state regulatory procedures. *Sweeton, supra* at 1165.

Both the Michigan Constitution and the United States Constitution preclude the government from de-

---

[6] The department initially found an MFTA deficiency of $225,000 and a GSTA deficiency of $30,384. During plaintiff's review of the audit results before the department issued its notice of intent to assess, these initial findings were reduced to $36,116 and $24,268, respectively. Plaintiff contends the errors resulted from Wagg's failing to review certain documents that he had been provided and basic math errors; defendants contend the errors resulted from plaintiff's not providing the documents during the audit.

priving a person of life, liberty, or property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17; *Hinky Dinky Supermarket, Inc v Dep't of Community Health,* 261 Mich App 604, 605-606; 683 NW2d 759 (2004). The principle of fundamental fairness is the essence of due process. *In re Adams Estate,* 257 Mich App 230, 233-234; 667 NW2d 904 (2003). Due process is a flexible concept, however, and determining what process is due in a particular case depends on the nature of the proceeding, the risks and costs involved, and the private and governmental interests that might be affected. *Genesco, Inc v Dep't of Environmental Quality,* 250 Mich App 45, 56; 645 NW2d 319 (2002). Generally, "[d]ue process in civil cases requires notice of the nature of the proceedings and an opportunity to be heard in a meaningful time and manner by an impartial decisionmaker." *Hinky Dinky, supra* at 606, quoting *Cummings v Wayne Co,* 210 Mich App 249, 253; 533 NW2d 13 (1995) (citation deleted).

Because the collection of a tax constitutes a deprivation of property, a state must provide sufficient procedural safeguards to satisfy due process requirements. *McKesson Corp v Div of Alcoholic Beverages,* 496 US 18, 36; 110 S Ct 2238; 110 L Ed 2d 17 (1990). But states "are afforded great flexibility in satisfying the requirements of due process in the field of taxation." *Nat'l Private Truck Council, Inc v Oklahoma Tax Comm,* 515 US 582, 587; 115 S Ct 2351; 132 L Ed 2d 509 (1995). Due process is satisfied when a taxpayer has "a fair opportunity to challenge the accuracy and legal validity of their tax obligation [and] a 'clear and certain remedy' for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one." *McKesson, supra* at 39, quoting *Atchison T & S F R Co v O'Connor,* 223 US 280, 285; 32 S Ct 216; 56 L Ed 436 (1912).

The Michigan statutory scheme at issue provides taxpayers with notice and an opportunity for meaningful hearings both predeprivation and postdeprivation. MCL 205.21; MCL 205.22; *Kostyu v Dep't of Treasury,* 147 Mich App 89, 92; 382 NW2d 739 (1985). Plaintiff was accorded "a fair opportunity to challenge the accuracy and legal validity of [its] tax obligation" and was provided a meaningful, clear, and certain remedy to correct any unlawful tax collected. *McKesson, supra* at 39. As noted already, plaintiff has alleged no conduct by defendants that deprived it of notice or of an opportunity to be heard at a meaningful time and in a meaningful manner by an impartial decision maker. *In re Adams Estate, supra* at 234. Consequently, plaintiff has failed to sufficiently allege a violation of its federal constitutional right to due process of law. US Const, Am V, Am XIV. Further, 42 USC 1983 is not itself an independent source of substantive rights; rather it merely provides a remedy for the violation of rights guaranteed by the federal constitution or federal statutes,[7] and because plaintiff has failed to sufficiently allege a violation of its federal constitutional right to due process, plaintiff failed to state a claim for which relief may be granted. MCR 2.116(C)(8); *Spiek, supra* at 337-338. The trial court properly granted defendants' motion for summary disposition on plaintiff's § 1983 due process claim.

Because plaintiff failed to state an actionable claim for a violation of a federal right under 42 USC 1983, it follows that plaintiff failed to state a claim for attorney fees pursuant to 42 USC 1988. Moreover, because adequate remedies are available under state law to aggrieved taxpayers, declaratory or injunctive relief is

---

[7] See *York v Detroit (After Remand),* 438 Mich 744, 757-758; 475 NW2d 346 (1991), citing *Graham v Connor,* 490 US 386, 393-394; 109 S Ct 1865; 104 L Ed 2d 443 (1989).

not available through federal district courts under § 1983. 28 USC 1341; *Nat'l Private Truck Council, supra* at 588 ("[I]t is clear that [federal courts] may not award damages or declaratory or injunctive relief in state tax cases when an adequate state remedy exists."). This same rule applies to state courts hearing § 1983 claims because "Congress did not authorize injunctive or declaratory relief under § 1983 in state tax cases when there is an adequate remedy at law." *Id.* Thus, irrespective of "[w]hether a suit is brought in federal or state court, Congress simply did not authorize the disruption of state tax administration in this way." *Id.* at 590. In addition, MCL 205.28(1)(b) applies to the GSTA and the MFTA and provides: "An injunction shall not issue to stay proceedings for the assessment and collection of a tax." Consequently, the trial court did not err in dismissing all of plaintiff's 42 USC 1983 claims for failing to state a claim upon which relief may be granted.

For the reasons already discussed, the trial court also properly dismissed all of plaintiff's § 1983 claims against the individual defendants on the ground of qualified or "good faith" immunity. MCR 2.116(C)(7). See *Harlow v Fitzgerald*, 457 US 800, 818; 102 S Ct 2727; 73 L Ed 2d 396 (1982), and *Guider v Smith*, 431 Mich 559, 568; 431 NW2d 810 (1988). "If the undisputed facts show that the defendant's conduct violated no clearly established constitutional standards, qualified immunity applies as a matter of law." *Id.* Here, even were we to accept plaintiff's complaint as true, at best it alleges violations of state law that do not constitute violations of clearly established federal due process rights.

### B. CONST 1963, ART 1, § 17

The trial court concluded that plaintiff's circuit court complaint failed to allege a violation of either proce-

dural or substantive due process and also failed to state an actionable claim under the "fair and just treatment" clause of Const 1963, art 1, § 17. We agree.

### 1. PROCEDURAL DUE PROCESS

Const 1963, art 1, § 17 provides, in pertinent part:

> No person shall . . . be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed.

On appeal, plaintiff cites *Bohannon v Sheraton-Cadillac Hotel, Inc*, 3 Mich App 81; 141 NW2d 722 (1966), which held, "When an administrative agency promulgates a rule for the benefit of litigants and then deprives a litigant of this right, it is a violation of the due process clauses of both the 1908 and 1963 Michigan Constitutions." Bohannon was a worker's compensation claimant for whom the appeal board "inadvertently did not grant a hearing" contrary to the board's own rules of procedure. *Bohannon, supra* at 82. The *Bohannon* Court engaged in no legal analysis beyond that stated above in reaching its constitutional conclusion, which this Court is not bound to follow. MCR 7.215(J)(1). In contrast, both our Supreme Court and this Court have held that this state's Due Process Clause provides protection coextensive with its federal constitutional counterpart. *People v Sierb*, 456 Mich 519, 523; 581 NW2d 219 (1998); *English v Blue Cross Blue Shield of Michigan*, 263 Mich App 449, 459-460; 688 NW2d 523 (2004). "The 'fundamental requirement of due process' is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Id.* (citation deleted). To the extent *Bohannon* correctly

found a violation of due process rights,[8] it was because there was no meaningful opportunity to be heard. Here, the statutory scheme accords constitutional due process, *Kostyu, supra* at 92, and plaintiff does not allege that it was in fact denied notice or an opportunity to be heard at a meaningful time and in a meaningful manner. The trial court correctly ruled that plaintiff failed to state a claim for which relief could be granted based on the department's alleged failure to accord plaintiff with state procedural due process. MCR 2.116(C)(8).

### 2. SUBSTANTIVE DUE PROCESS

Plaintiff next asserts that the trial court erred by dismissing its substantive due process claims under Const 1963, art 1, § 17 for injunctive (count II) and declaratory relief (counts III and V). Plaintiff contends that § 22 of the MFTA, MCL 207.122, unconstitutionally delegated legislative authority because it permitted the department to specify required details of invoices for diesel fuel sales without reasonably precise standards; therefore, the department could not enforce RAB 91-12. "One of the requirements of substantive due process is the existence of reasonably precise standards to be utilized by administrative agencies in the performance of delegated legislative tasks." *State Hwy Comm v Vanderkloot,* 392 Mich 159, 169-170; 220 NW2d 416 (1974). The *Vanderkloot* Court held that the Legislature provided constitutionally sufficient standards to the highway commission to condemn private property for

---

[8] This Court later held that providing oral argument before the Worker's Compensation Appeal Board, at issue in *Bohannon,* was not required as a matter of either federal or state constitutional due process of law. *Leonardi v Sta-Rite Reinforcing, Inc,* 120 Mich App 377, 382-383; 327 NW2d 486 (1982). Likewise, in *English, supra* at 460, this Court held that "an oral hearing is not necessary to provide a meaningful opportunity to be heard."

highway purposes in the single word "necessity." Likewise, here, the trial court found the Legislature provided standards "as reasonably precise as the subject matter requires or permits," *Osius v St Clair Shores,* 344 Mich 693, 698; 75 NW2d 25 (1956), in the single word "invoice." The trial court therefore dismissed plaintiff's substantive due process claims pursuant to MCR 2.116(C)(8). Although the trial court reached the correct result, we find that the Legislature provided the department standards beyond the word "invoice" to guide its exercise of delegated discretion.

Section 22(1) provides a discount of six cents a gallon of the tax imposed on diesel motor fuel pursuant to the MFTA "if the diesel motor fuel is delivered into the fuel supply tanks of a commercial motor vehicle licensed under the motor carrier fuel tax act [MCL 207.211 *et seq.*]." Plaintiff rests its constitutional argument on the language of § 22(2) that reads in pertinent part:

> The tax on diesel motor fuel sold and delivered in this state by the retailer into the fuel supply tanks of motor vehicles shall be collected by the supplier and paid over monthly to the department except that the retail dealer shall pay over monthly to the department 6 cents of the tax imposed . . . for each gallon sold for delivery into or supplied into the fuel supply tanks of a motor vehicle that is not a commercial motor vehicle . . . and eligible for discount allowed under subsection (1). *Each diesel motor fuel retailer shall invoice sales of diesel motor fuel as prescribed by the department. . . .* [MCL 207.122(2) (emphasis added).]

The department exercised the delegated authority in the emphasized language by approving RAB 91-12 on October 10, 1991. The RAB stated the department's belief that the advent of computerized card pump and key pump systems allowed abuses of the commercial motor carrier discount because the discount was "often being given to anyone with access to a card or a key." To

address these concerns, RAB 91-12 requires minimum invoice record keeping for retail sales of diesel motor fuel as follows:

1. Seller's name, address, and account number.

2. Date of sale.

3. Name of purchaser.

4. Serial number of the current-year license fuel decal or serial number of the 5-Day Fuel Tax Permit in the driver's possession.

5. Product sold.

6. Number of gallons.

7. Total price per gallon, including the current full Michigan motor fuel tax.

8. Indication of the 6 cent discount, shown as a separate item.

RAB 91-12 requires additional details for card pump systems. It also provides that the "[f]ailure to meet any of these requirements will result in the disallowance of any discount given at the time of the sale." Plaintiff contends that these invoicing requirements are arbitrary and capricious, especially the requirement of the forfeiture of the discount upon noncompliance. Therefore, plaintiff argues, RAB 91-12 violates substantive due process under Const 1963, art 1, § 17.

In *Blue Cross & Blue Shield of Michigan v Governor*, 422 Mich 1, 51; 367 NW2d 1 (1985), our Supreme Court noted that it had earlier stated the criteria for evaluating a claim that the Legislature unconstitutionally delegated its authority in *Dep't of Natural Resources v Seaman*, 396 Mich 299, 309; 240 NW2d 206 (1976). The *Seaman* Court set forth the following "guiding principles":

First, the act in question must be read as a whole; the provision in question should not be isolated but must be construed with reference to the entire act.

Second, the standard should be as reasonably precise as the subject matter requires or permits.

The preciseness of the standard will vary with the complexity and/or the degree to which subject regulated will require constantly changing regulation. . . .

Third, if possible the statute must be construed in such a way as to "render it valid, not invalid, as conferring administrative, not legislative" power and as vesting discretionary, not arbitrary, authority. [*Seaman, supra* at 309 (citations and punctuation deleted).]

The trial court began its analysis with the third criterion and the "well-established rule that a statute is presumed to be constitutional unless its unconstitutionality is clearly apparent." *McDougall v Schanz,* 461 Mich 15, 24; 597 NW2d 148 (1999). "This presumption is especially strong where tax legislation is concerned." *Kostyu, supra* at 93. Plaintiff faults the trial court for misapplying the standard of review by requiring plaintiff to prove the statute unconstitutional "beyond a reasonable doubt." Although the trial court may have strayed into the lexicon of the criminal law, it surely captured the essence of our Supreme Court's longstanding teaching regarding the judiciary's duty of deference to statutes the Legislature enacts. A court must "exercise the power to declare a law unconstitutional with extreme caution, and . . . never exercise it where serious doubt exists . . . ." *Phillips v Mirac, Inc,* 470 Mich 415, 422; 685 NW2d 174 (2004), citing *Sears v Cottrell,* 5 Mich 251, 259 (1858). Furthermore, " '[e]very reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the

Constitution that a court will refuse to sustain its validity.' " *Phillips, supra* at 423, quoting *Cady v Detroit,* 289 Mich 499, 505; 286 NW 805 (1939). The trial court ruled that plaintiff failed to overcome the presumption that § 22 is constitutional. We agree.

With regard to the second *Seaman* criterion, that "the standard should be as reasonably precise as the subject matter requires," the trial court reasoned that although "many aspects of sales taxation in general can be highly complex, the same is surely untrue of the specific power delegated by section 22(2) to Treasury, to prescribe departmental requirements for the invoicing of sales by diesel fuel retailers." Thus, the trial court found that the single, well-known word "invoice," having a generally understood meaning, provided adequate standards for the department to specify the details for the standardized form and content of invoices to be used by all diesel fuel retailers. The trial court likened "invoice" to the one- or two-word standards upheld as sufficient to satisfy due process, citing *Vanderkloot, supra* ("necessity" in the context of condemnation), *G F Redmond & Co v Michigan Securities Comm,* 222 Mich 1; 192 NW 688 (1923) ("good cause" to revoke a securities dealer's license), and *Klammer v Dep't of Transportation,* 141 Mich App 253; 367 NW2d 78 (1985) (the statute permitted a waiver of mandatory retirement from state service when "necessary").

We concur in the trial court's reasoning, but also find additional reasons for concluding that the Legislature provided constitutionally sufficient standards to guide the department in the exercise of its discretion. Specifically, applying the first and third *Seaman* principles to § 22, we conclude that the legislative purpose of requiring that diesel fuel sales be invoiced is to ensure that the discount of § 22(1) is granted to only those sales

that qualify, i.e., when "diesel motor fuel is delivered into the fuel supply tanks of a commercial motor vehicle licensed under the motor carrier fuel tax act . . . ." MCL 207.122(1). Thus, the purpose for which the invoice is required also provides standards to guide the department in exercising the authority delegated to it to "prescribe" the details required in the invoice by § 22(2).

Furthermore, plaintiff concedes in its brief that the standards would be constitutionally sufficient if the Legislature had provided that the invoice the department prescribes required information reasonably necessary to determine the amount of tax due. Plaintiff's concession is fatal to its argument. Although the language plaintiff suggests is not found in § 22 of the MFTA, similar language is found in § 11(2)[9] of the MFTA, MCL 207.111(2). At the relevant time, that section provided:

> Each supplier, exporter, wholesale distributor, carrier, terminal operator, liquid fuel carrier, and retail dealer shall maintain and keep, for a period of 4 years, suitable books, records, and accounts of all gasoline and *diesel motor fuel* received, manufactured, stored, used, *sold, or delivered* within this state, sold for export from this state, or exported from this state, together with all *invoices*, delivery tickets, bills of lading, and other pertinent records and papers *as may be required by the commissioner for the reasonable administration of this act.* [MCL 207.111(2) (emphasis supplied).]

In sum, the Legislature provided constitutionally sufficient standards for the department to implement the invoice requirement of § 22(2). Accordingly, the trial court did not err by ruling that plaintiff failed to state a

---

[9] Like the rest of the MFTA, this section was repealed, effective April 1, 2001. See n 1.

claim for either injunctive or declaratory relief on the basis of its assertion that the Legislature's delegation of authority to the department to prescribe the details of the invoice required by § 22(2) violated state substantive due process.[10] MCR 2.116(C)(8).

### 3. FAIR AND JUST TREATMENT

Plaintiff next contends that the trial court erred by dismissing its claims for injunctive relief (count II) and declaratory relief (count V), alleging that RAB 91-12 and the department's use of a "block sampling" technique during the audit violated the "fair and just treatment" clause of Const 1963, art 1, § 17. The trial court, citing *Johnson v Wayne Co*, 213 Mich App 143, 155; 540 NW2d 66 (1995), concluded that plaintiff failed to state a claim upon which relief could be granted because the "audit by an executive department implicated neither an investigation nor a hearing" within the meaning of Const 1963, art 1, § 17. We agree.

"The primary objective in interpreting a constitutional provision is to determine the text's original meaning to the ratifiers, the people, at the time of ratification." *Wayne Co v Hathcock*, 471 Mich 445, 468; 684 NW2d 765 (2004). Although technical or legal terms should be ascribed their technical or legal meanings, in general this Court's task is to ascertain and give effect to the common understanding of the text at the

---

[10] In light of our conclusion that plaintiff's procedural and substantive due process claims lack merit, we agree with the trial court that "no matter how unpleasant or inconveniencing [the conduct of the department's employees] may have been in other respects," such conduct did not deny plaintiff "due process guarantees during the course of their tax audit." Although plaintiff viewed the department's agents' conduct as arbitrary or rude, plaintiff "failed to identify and allege with specificity any unlawful conduct of constitutional magnitude that could support the claim that its state rights to due process had been violated."

time of ratification. *Id.* at 468-469; *Carmacks, supra* at 209. We must "attempt to give effect to the language in the Constitution as the 'popular mind' would have understood it at the time it was adopted." *Id.*; *People v Dean*, 14 Mich 406, 417 (1866). "A collateral rule 'is that to clarify meaning, the circumstances surrounding the adoption of a constitutional provision and the purpose sought to be accomplished may be considered.' " *Comm for Constitutional Reform v Secretary of State*, 425 Mich 336, 340; 389 NW2d 430 (1986), quoting *Traverse City School Dist v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971).

The text at issue in Const 1963, art 1, § 17 provides, "The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed." The plain text conveys that the protection of "fair and just treatment" applies only "in the course of," or "during," either a "legislative" or "executive" "investigation" or "hearing." *Johnson, supra* at 155. Further, the historical context in which this clause was adopted suggests that it was intended to protect against the excesses and abuses of Cold War legislative or executive investigations or hearings. See *Jo-Dan, Ltd v Detroit Bd of Ed*, unpublished opinion per curiam of the Court of Appeals, issued July 14, 2000 (Docket No. 201406), slip op at 10-14. We doubt that the "common understanding" or "popular mind" at the time of ratification regarded this provision as a protection against the adverse consequences of a run-of-the-mill tax audit. Nevertheless, we examine the conduct that plaintiff alleges comes within its ambit to determine whether it might fit within the plain meaning of the constitutional text. *Carmacks, supra* at 211.

First, plaintiff offers no argument or authority about how the department's adoption of RAB 91-12 could possibly constitute unfair and unjust "treatment." The word "treatment" clearly connotes some active conduct during the "course of" a hearing or investigation. An administrative agency's interpretation or implementation of a statutory provision can hardly amount to a violation of the "fair and just treatment" clause simply because plaintiff disagrees with the agency's interpretation or implementation. In any case, because plaintiff has not adequately briefed or argued this issue, it has abandoned it. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002).

The department referee who presided over the "informal conference" process pursuant to § 21 of the revenue act, MCL 205.21, explained the nature of the "block sampling" dispute and the parties' positions in her report of January 29, 1999:

> The motor fuel tax audit involves a disallowance of less than 2% [1.76%] of the motor fuel discount claimed on returns filed. The disallowance is based on review of invoices for discounted sales made during the month of July 1994. A total of 825,625 gallons of discounted sales were [sic] reported for that month. The audit disallowed a discount on sales of 14,535 gallons. The department states that the discount was reduced because some invoices did not include the purchaser's name, other invoices reflected an incomplete decal number while still other invoices reflected an invalid decal number. An error rate was projected over the total audit time period.
>
> The taxpayer objects to the auditor's test sample with the contention that it was not conducted in accordance with widely recognized sampling methods. The auditor made mistakes during the audit as well. An error rate of less than 2% should be acceptable. The taxpayer implemented a computer system specifically for compliance purposes. Inaccurate discount slips were reported by one

employee who left after the test month. Inclusion of exceptions which were caused by this one employee distort the test period. The State of Michigan has not implemented a system which allows sellers to verify decal numbers given by customers. The taxpayer has no way of knowing if a number accepted is correct.

\* \* \*

The department issued RAB 91-12 in response to [MCL 207.122(2)]. The RAB lists six requirements which must be met with each sales invoice in order to become eligible for the discount. Two of the criteria require that the invoices include the name of the purchaser and the serial number of the current-year license fuel decal or the serial number of the 5-day Fuel Tax Permit in the driver's possession.

Schedule 6 of the audit workpapers lists approximately 60 sales per page. The schedule is made up of 116 pages. Approximately 6,960 sales were reviewed as part of the department's test period. Approximately 120 were disallowed. The taxpayer's argument does not connect general sampling principles with the specific amount of sales reviewed or with the specific amount of sales disallowed. The law does not provide an exemption for an "acceptable" error rate.

The trial court ruled that plaintiff has no right to choose the audit method employed by the department. We agree that the Legislature has granted the department wide discretion in the selection of auditing methods. MCL 205.21; *Vomvolakis v Dep't of Treasury*, 145 Mich App 238, 244-245; 377 NW2d 309 (1985). The *Vomvolakis* Court observed that the department "is to make assessments only when it has reason to believe that a return does not supply sufficient or accurate information or when proper records are not maintained by a taxpayer. The state's power to tax would be greatly eroded if [the department] could not make assessments

on available information in situations where taxpayers do not maintain proper records." *Id.* at 245. Although plaintiff proffered opinion testimony that the audit method used by the department was not the most reliable and should have been verified with test samples chosen from throughout the period audited, plaintiff failed to offer any evidence that the error rate determined by the "block sampling" method was actually inaccurate. Thus, plaintiff failed to demonstrate as a factual matter that any unfairness or injustice occurred.

Further, we agree that the trial court correctly rejected plaintiff's argument that the audit method the department selected violated the "fair and just treatment" clause of Const 1963, art 1, § 17. Because plaintiff contends the violation occurred during the department's audit rather than during a "hearing," the audit must be considered an "investigation" to come within the protection of the "fair and just treatment" clause. *Carmacks, supra* at 212. But defendants did not engage in a searching inquiry to ascertain facts. *Id.* at 210-211, citing *Messenger v Dep't of Consumer & Industry Services*, 238 Mich App 524, 532-533; 606 NW2d 38 (1999). Rather, defendants conducted an administrative review of business records that plaintiff was statutorily obligated to maintain to substantiate its GSTA and MFTA tax returns and its claim to the six cents a gallon discount allowed by § 22(1) of the MFTA. MCL 207.111(2); MCL 207.122(2). An "audit" is defined as "an official examination and verification of financial accounts and records." *Random House Webster's College Dictionary* (2001). An "audit" is what occurred here, not an "investigation" within the meaning of the "fair and just treatment" clause. *Carmacks, supra* at 212;

*Johnson, supra* at 155. Plaintiff's "fair and just treatment" claim fails. MCR 2.116(C)(8).

### C. THE ADMINISTRATIVE PROCEDURES ACT

Plaintiff also argues that the trial court erred by not finding that RAB 91-12 was a "rule" as defined in § 7 of the APA, MCL 24.207, and therefore invalid and unenforceable because it was not promulgated according to the procedure dictated by the APA.[11] MCL 24.243(1); *Clonlara, Inc v State Bd of Ed*, 442 Mich 230, 239; 501 NW2d 88 (1993). Pertinent to plaintiff's position, MCL 24.207 provides:

> "Rule" means an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency, including the amendment, suspension, or rescission of the law enforced or administered by the agency.

Plaintiff contends that RAB 91-12 is more than an agency's interpretative statement because it was strictly applied in plaintiff's case, resulting in the disallowance of certain discounts plaintiff had claimed. Accordingly, plaintiff argues, the RAB had the effect of law and must be a "rule" under the APA that is unenforceable because required procedures were not followed.

The department asserts that it was granted specific Legislative authority, independent from the APA, to adopt RAB 91-12. It points to § 3(f) of the revenue act,

---

[11] Neither party addresses, nor do we opine, whether MCL 24.243(2) affects plaintiff's right to challenge the department's 1991 revenue bulletin on the basis of noncompliance with the APA. That subsection provides, "A proceeding to contest a rule on the ground of noncompliance with the requirements of sections 41 and 42 shall be commenced within 2 years after the effective date of the rule."

MCL 205.3(f), which provides that "[t]he department may periodically issue bulletins that index and explain current department interpretations of current state tax laws." Further, the department asserts that the Legislature granted direct authority for the RAB in § 22(2) of the MFTA, MCL 207.122(2), which provided in part: "Each diesel motor fuel retailer shall invoice sales of diesel motor fuel as prescribed by the department." Even if RAB 91-12 would otherwise be considered a "rule" under the APA, the department argues § 7 of the APA provides a number of exceptions, two of which apply. After defining "rule," § 7 of the APA continues:

> Rule does not include any of the following:
>
> * * *
>
> (h) A form with instructions, an interpretive statement, a guideline, an informational pamphlet, or other material that in itself does not have the force and effect of law but is merely explanatory.
>
> * * *
>
> (j) A decision by an agency to exercise or not to exercise a permissive statutory power, although private rights or interests are affected. [MCL 24.207.]

Relying on *Kent Co Aeronautics Bd v Dep't of State Police*, 239 Mich App 563, 582-584; 609 NW2d 593 (2000), *Auto Club Ins Ass'n v Sarate*, 236 Mich App 432, 435-436; 600 NW2d 695 (1999), and *Faircloth v Family Independence Agency*, 232 Mich App 391, 403-404; 591 NW2d 314 (1998), the trial court determined that "[c]ertain portions of RAB 91-12 are clearly explanatory and interpretive, expressing Treasury's position on its standardization of invoices as to form and content [and those] portions of the document are within the § 7(h) exclusion from the APA" rule promulgation require-

ments. We agree. The Legislature, not RAB 91-12, established the criterion that to qualify for the § 22(1) discount, diesel fuel had to be "delivered into the fuel supply tanks of a commercial motor vehicle licensed under the motor carrier fuel tax act . . . ." Further, the Legislature, not RAB 91-12, established the requirement that diesel fuel retailers "invoice sales of diesel motor fuel as prescribed by the department . . . ." MCL 207.122(2). Our Supreme Court explained in *Clonlara, supra* at 240:

> Agencies have the authority to interpret the statutes they are bound to administer and enforce.
>
> Legislative rules have the force of law. Interpretive "rules" state an agency's interpretation of a statute. Legislative rules are enforceable in and of themselves. But an agency must rely on the underlying statute to support its reading of a statute set forth in an interpretive "rule."

We find that RAB 91-12 comes within the narrow exception of § 7(h) of the APA because it is an "interpretive statement," or a "guideline" that merely explains the requirements of MCL 207.122 that a taxpayer claiming the diesel fuel discount must satisfy. *Detroit Base Coalition for the Human Rights of the Handicapped v Dep't of Social Services*, 431 Mich 172, 184; 428 NW2d 335 (1988); *Faircloth, supra* at 403. In this case, plaintiff failed to qualify for a portion of the diesel fuel discount it claimed, not because it failed to comply with the department's revenue bulletin but because it failed to maintain adequate invoices to substantiate that it satisfied the criteria of § 22(1) of the MFTA. Thus, RAB 91-12 is not a "rule" within the meaning of the APA and is not subject to the procedural requirements of that act. See, e.g., *Catalina Marketing Sales Corp v Dep't of Treasury*, 470 Mich 13, 21; 678 NW2d 619 (2004) (RAB 95-1 was interpretive and could not adopt a rule conflicting with the applicable statutes).

Moreover, we must also reject plaintiff's argument that because the department strictly applied RAB 91-12, it has the "force and effect" of law and must be a "rule" under the APA. The trial court also found that RAB 91-12 was exempted from the rule-making procedures of the APA by § 7(j) because the authority granted by § 22(2) of the MFTA to "prescribe" the invoice required by that section was a "permissive statutory power." Again, we agree. Subsection 7(j) excepts administrative action from the APA's definition of "rule" when the Legislature has either explicitly or implicitly authorized the action in question. *Detroit Coalition, supra* at 187-188. See also *Michigan Trucking Ass'n v Pub Service Comm (On Remand)*, 225 Mich App 424, 430; 571 NW2d 734 (1997) (§ 7[j] applied to the agency's action because a statute explicitly authorized it), and *Village of Wolverine Lake v State Boundary Comm,* 79 Mich App 56, 59; 261 NW2d 206 (1977) (§ 7[j] applied because the agency's policy was the same as the statutory scheme's implicit policy). Here, § 22(2) of the MFTA explicitly required the department to "prescribe" the invoice required by that section and did not mandate the department to do so pursuant to the procedural requirements of the APA. Compare *Detroit Coalition, supra* at 188 (in which the statute required that "rules" be promulgated) with *Michigan Trucking Ass'n, supra* at 430 (in which the statute permitted the adoption of a rule or order). Consequently, we conclude that § 7(j) of the APA exempted the department from the need to comply with the rule-making procedures of that act before adopting RAB 91-12 to "prescribe" the invoice required by § 22(2) of the MFTA.

### IV. DOCKET NO. 251200

Plaintiff's complaint in the Court of Claims mirrored the claims it raised in the circuit court case discussed in

part III. Plaintiff's Court of Claims case on these issues fails for the same reasons as the identical circuit court claims. The trial court correctly granted summary disposition for the department pursuant to MCR 2.116(C)(8).

### 1. SECTION 6a OF THE GSTA

Plaintiff's last claim is that the department arbitrarily, capriciously, and unlawfully interpreted § 6a of the GSTA, MCL 205.56a. That section requires gasoline retailers to prepay sales tax to their supplier at the time of "purchase or shipment," MCL 205.56a(1), but then permits the retailer to "claim an estimated prepayment credit . . . for prepayments made during the month for which the return is required" for the tax on sales by the retailer. MCL 205.56a(3). Plaintiff contends that the time of its purchase of gasoline supplies is when it pays its supplier's invoice and that it is simply using cash basis accounting. The department argues that § 6a requires plaintiff to claim the prepayment credit in the month it actually receives gasoline from its wholesaler, i.e., that the statute implicitly requires accrual basis accounting of the prepayment credit.

MCL 205.56a provides in pertinent part:

(1) *At the time of purchase or shipment* from a refiner, pipeline terminal operator, or marine terminal operator, a purchaser or receiver of gasoline *shall prepay a portion of the tax imposed by this act* at the rate provided in this section to the refiner, pipeline terminal operator, or marine terminal operator for the purchase or receipt of gasoline. . . .

\* \* \*

(3) A person subject to tax under this act who makes prepayment to another person as required by this section

may claim an estimated prepayment credit on its regular monthly return filed pursuant to section 6. *The credit shall be for prepayments made during the month for which the return is required* and *shall be based upon the difference between prepayments made in the immediately preceding month and collections of prepaid tax received from sales or transfers.* [Emphasis added.]

The trial court upheld the department's interpretation of the statute by reasoning as follows:

> The GSTA states plainly that the tax accrues at the end of the month in which the sales transaction takes place, not the month in which the purchaser or receiver makes payment to the supplier. That is also when a return to Treasury is required and, therefore, when the prepayment of tax must be made for the claimed credit. The accrual method of accounting, as required by Treasury in its forms and instructions for claiming prepayment credits, is implicit in the GSTA and therefore lawful. Plaintiff's contentions to the contrary are without merit and must therefore be dismissed under MCR 2.116(C)(8).

Our primary goal in interpreting a statute is to ascertain and give effect to the intent of the Legislature. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). We first attempt to ascertain the Legislature's intent from the specific language of the statute. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). When the plain and ordinary meaning of the language is clear, judicial construction is neither necessary nor permitted. *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 720; 691 NW2d 1 (2005). But, if reasonable minds could differ about the meaning of a statute, judicial construction is appropriate. *Adrian School Dist v Michigan Pub School Employees' Retirement Sys*, 458 Mich 326, 332; 582 NW2d 767 (1998). When judicial construction of a statute is permitted, we must construe the statutory language reasonably, mind-

ful of the purpose of the act. *Draprop Corp v City of Ann Arbor*, 247 Mich App 410, 415; 636 NW2d 787 (2001), citing *Rose Hill Ctr, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1987). Unless defined in the statute or possessing special technical meaning, we must accord every word or phrase of a statute its plain and ordinary meaning, considering the context of its placement and purpose in the statutory scheme. *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999); *City of Kalamazoo v KTS Industries, Inc*, 263 Mich App 23, 33; 687 NW2d 319 (2004). Pertinent to this case, an administrative agency's longstanding, consistent interpretation of a statute within the agency's responsibility is entitled to great weight and should not be overruled unless that interpretation is clearly erroneous. *Schmaltz v Troy Metal Concepts, Inc*, 469 Mich 467, 471; 673 NW2d 95 (2003). Of course, an administrative agency's interpretation of a statute cannot overcome the statute's plain meaning. *Catalina, supra* at 23-24, citing *Ludington Service Corp v Ins Comm'r*, 444 Mich 481, 505; 511 NW2d 661 (1994).

Applying these principles to the statute at issue, we conclude that the trial court reached the correct result, although we do not agree completely with the court's reasons.

The GSTA imposes a tax on "all persons engaged in the business of making sales at retail . . . ." MCL 205.52(1). At the time pertinent to this case, "sale at retail" meant "a transaction by which the ownership of tangible personal property is transferred for consideration, if the transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use, or for any purpose other than for resale . . . ." MCL 205.51(1)(b); *Univ of Michigan Bd of Regents v Dep't of Treasury*, 217 Mich App 665, 668;

553 NW2d 349 (1996). It is true, as the trial court noted, that § 6(3) of the GSTA, MCL 205.56(3), provides: "The tax imposed under this act shall accrue to this state on the last day of the month in which the sale is incurred." But the question presented here is when does the statute require a retailer to prepay this tax to its supplier of gasoline. The answer is found in the text of § 6a(1), not § 6(3).[12]

MCL 205.56a(1) fixes the mandatory time when a retailer must prepay sales tax to its supplier that the retailer will subsequently collect upon ultimate sale of gasoline to consumers. "The word 'shall' is unambiguous and is used to denote mandatory, rather than discretionary, action." *STC, Inc v Dep't of Treasury*, 257 Mich App 528, 537; 669 NW2d 594 (2003). Under plaintiff's interpretation of the statute, the word "purchase" in the phrase "[a]t the time of purchase or shipment" must be the equivalent of "payment." But the plain and ordinary meaning of the word "purchase" conveys a much broader concept than mere "payment." Rather, "purchase" means "to acquire" either by contemporaneous payment of money or promise of future payment or equivalent exchange. See *Random House Webster's College Dictionary* (1992), which defines "purchase" as "*to acquire* by the payment of money or its equivalent; buy."

This broad definition of "purchase" is also consistent with its legal meaning. "Black's [Law Dictionary (6th ed)] defines 'purchase' as 'To own by paying or [by] promising to pay an agreed [. . . ] price which is enforceable at law. . . . The term 'purchase' includes any contract to purchase or *otherwise acquire.*' " *Graves v American Acceptance Mortgage Corp (On Rehearing),*

---

[12] This latter subsection was designated § 6(4) between the effective dates of 1998 PA 265 (July 17, 1998) and 2004 PA 173 (September 1, 2004).

469 Mich 608, 616 n 5; 677 NW2d 829 (2004) (emphasis added). In *Graves*, the Court used this broad meaning of "purchase" to support its "finding that, upon signing a contract to purchase property and acquiring equitable title therein, the [land contract] vendee has purchased that property." *Id*.

Moreover, this broad definition of the word "purchase" is consistent with its placement in the broader statutory scheme of the sales tax. Under the GSTA, "to sell," the mirror image of "to buy" or "to purchase," means a transaction by which the ownership of tangible personal property is transferred for consideration, which "includes a conditional sale, installment lease sale, and other transfer of property if title is retained as security for the purchase price but is intended to be transferred later." MCL 205.51(1)(c), before 2004 PA 173 deleted that subsection.

We also find it appropriate to examine the Legislature's use of the word "purchase" in the Use Tax Act (UTA), MCL 205.91 *et seq*. When statutes relate to the same subject or share a common purpose they are *in pari materia* and must be read together as one law, even if they contain no reference to one another and were enacted on different dates. *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998), citing *Detroit v Michigan Bell Tel Co*, 374 Mich 543, 558; 132 NW2d 660 (1965). " 'A sales-use tax scheme is designed to make all tangible personal property, whether acquired in, or out of, the state subject to a uniform tax burden. Sales and use taxes are mutually exclusive but complementary, and are designed to exact an equal tax based on a percentage of the purchase price of the property in question.' " *Catalina, supra* at 19 n 3, quoting 85 CJS 2d, Taxation, § 1990, p 950. The UTA broadly defines "purchase" as "to acquire for a consideration, whether

the acquisition is effected by a transfer of title, of possession, or of both, or a license to use or consume; whether the transfer is absolute or conditional, and by whatever means the transfer is effected; and whether consideration is a price or rental in money, or by way of exchange or barter." MCL 205.92(e); see *Kal-Aero, Inc v Dep't of Treasury*, 123 Mich App 46, 52; 333 NW2d 171 (1983). Because the Legislature, by adopting a sales-use tax scheme, intended to impose a uniform tax, whether from the perspective of the retail seller (sales tax) or the buying consumer (use tax), we conclude the word "purchase" was intended to have the same broad meaning in each act.

In summary, the plain and ordinary meaning of the word "purchase" in § 6a(1) of the GSTA is to acquire possession of or legal or equitable title to gasoline, regardless of when payment is actually made to the gasoline supplier. This interpretation is also consistent with the other time-marker in § 6a(1), "shipment," which likewise does not require actual payment to the supplier or shipper before giving rise to the mandatory requirement that "a purchaser or receiver of gasoline shall prepay a portion of the tax imposed by this act . . . ." Because § 6a(1) establishes the mandatory time to prepay the tax as "at the time of purchase or shipment," which may precede the time of actual prepayment, the statute implicitly requires accrual accounting when retailers calculate the "estimated prepayment credit" permitted by § 6a(3). Thus, the plain meaning of § 6a supports the department's longstanding interpretation rather than plaintiff's view.

Moreover, even if the statute is considered ambiguous, allowing judicial construction, we would still reach the same conclusion under the principles already discussed. The department's longstanding, consistent in-

terpretation of the statute within its responsibility to enforce is entitled to great weight and should not be overruled unless clearly erroneous. *Schmaltz, supra.* Because the department's interpretation of the statute is not overcome by the statute's plain meaning, the interpretation has not been shown to be clearly erroneous. *Catalina, supra* at 23-24. Further, the department's interpretation of the statute implicitly requires retailers to calculate estimated prepayment credits by using the accrual method of accounting for their acquisition of gasoline supplies and is both reasonable and consistent with the purpose of the sales-use tax scheme. Accordingly, the trial court correctly ruled that plaintiff failed to state a claim upon which relief could be granted. MCR 2.116(C)(8).

### V. CONCLUSION

For the reasons discussed, the trial court correctly granted defendants' motion for summary disposition and dismissed all of plaintiff's claims in each case. We affirm.