# STATE OF MICHIGAN

# COURT OF APPEALS

TRAVERSE VILLAGE, LLC,

        Plaintiff-Appellee,

and

LOUISE SHOMO,

        Plaintiff,

v

NORTHERN LAKES COMMUNITY MENTAL
HEALTH, GREGORY PAFFHOUSE, KAREN
CLINE, DAVE BRANDING, KEN BREHMER,
and CARRY GREY,

        Defendants-Appellants.

UNPUBLISHED
December 30, 2014

Nos. 317194; 317211
Grand Traverse Circuit Court
LC No. 13-029698-CK

Before: K. F. KELLY, P.J., and SAWYER and METER, JJ.

PER CURIAM.

In these consolidated appeals, defendants appeal from the trial court's order denying defendants' motion for partial summary disposition. The trial court ruled that the individual defendants were not entitled to qualified immunity from plaintiff's[1] federal due process claim brought under 42 USC 1983 and that plaintiff stated a claim on which relief could be granted under the fair and just treatment clause of the Michigan Constitution, Const 1963, art 1, § 17. We reverse and remand for the reasons explained below.

## I. FACTS

Plaintiff was a licensed adult-care facility for adults with mental impairments and developmental disabilities. Defendant Northern Lakes Community Health Center (Northern) is a

---

[1] Louise Shomo was added as a party late in the proceedings. For ease of reference, this opinion uses the term "plaintiff" to refer to Traverse Village, LLC.

-1-

community mental health agency as defined in the Michigan Mental Health Code and holds a contract with the Michigan Department of Community Health to serve as the Prepaid Inpatient Health Plan for five counties in Northwest Michigan, making it responsible for coordinating services for disorders involving mental health, developmental disability, and substance abuse for all Medicaid recipients in its assigned region.

On December 17, 2010, plaintiff and Northern entered into a Participating Provider Agreement (the Agreement), under which plaintiff agreed to provide treatment services to eligible consumers in exchange for reimbursement from Northern. Regarding its duration, Section I of the Agreement stated:

> B. Initial Term: This contract shall be in effect from December 17, 2010 to September 30, 2011 inclusive, unless earlier terminated in accordance with the termination section of this Agreement.

> C. Evergreen Term: Unless either party has given the other party 70 calendar days' written notice prior to the expiration of the Initial Term, this Agreement shall automatically be extended for a period not to exceed one year ("Additional Term").

Section X of the Agreement further provided that

> B. This contract may be terminated or not renewed by either party without cause with sixty (60) calendar day's [sic] written notification to the other party unless another date is mutually agreed to, in writing, by both parties.

On May 29, 2011, plaintiff sent a letter to Northern requesting that a resident be removed from plaintiff's facility, stating that the resident required more intense counseling and focused intervention than its staff could provide. On June 13, 2011, plaintiff sent Northern a letter giving 24 hours' notice that it was discharging the resident in purported compliance with Michigan Adult Foster Care licensing rules. The Agreement provides as follows regarding patient advocacy:

> H. Health Care Professionals may not be prohibited from discussing treatment options with the Consumer/guardian which may not reflect the preferences of the NLCMH Health Care Professional as defined in CFR Sec. 438.102.

> I. The Provider, including any Health Care Professional employed or contracted by the Provider, is not prohibited from advocating on behalf of one or more consumers with respect to grievance and appeal, utilization management, or authorization issues.

On June 17, 2011, Northern notified plaintiff that it was implementing a contract sanction that would serve as a temporary action until Northern's network-management-team meeting on July 14, 2011, at which time Northern would conduct a formal review of plaintiff's performance. According to plaintiff, Louise Shomo, an owner of plaintiff, thereafter attended a meeting with Northern officials to discuss the contract sanction, and a Northern representative indicated that

the patient-transfer issue prompted the sanction. On July 15, 2011, Northern notified plaintiff in writing that it had decided to not renew the Agreement when it expired on September 30, 2011, in accordance with sections I(C) and X(B) of the Agreement. According to plaintiff, Northern's refusal to do business with plaintiff has rendered it unable to serve residents in the five-county area within Northern's supervision, which resulted in a significant loss of revenue that forced plaintiff to close its facility and abandon its lease.

Plaintiff filed a complaint against Northern and several of its officers and management-team members (the individual defendants), raising three claims. In Count I, plaintiff alleged that Northern breached the Agreement by terminating it in retaliation for plaintiff advocating on behalf of a patient. In Count II, plaintiff alleged, pursuant to 42 USC 1983, that all defendants deprived plaintiff of property without due process of law under the Fourteenth Amendment of the United States Constitution by (1) conducting no investigation before issuing the contract sanction and terminating the Agreement, (2) refusing to give plaintiff specific reasons for the sanction and termination, (3) failing to give plaintiff an opportunity to respond to the issues supposedly justifying termination, and (4) refusing to hold a hearing at which plaintiff could respond to witnesses and contest evidence supporting termination. In Count III, plaintiff alleged that all defendants violated the fair and just treatment clause of the Michigan Constitution, 1963 Mich Const, art 1, § 17, by (1) conducting no investigation before issuing the contract sanction and terminating the Agreement, (2) refusing to give plaintiff specific reasons for the sanction and termination, (3) failing to provide witnesses or evidence supporting the sanction and termination, and (4) failing to hold a hearing so that plaintiff could confront witnesses and evidence. In each count, plaintiff requested injunctive relief in the form of "contract restoration," as well as damages, costs, and attorney fees.

Defendants moved for partial summary disposition, seeking the dismissal of Counts II and III. Regarding Count II, defendants asserted that the individual defendants were entitled to summary disposition under MCR 2.116(C)(7) because they had qualified immunity. Defendants argued that plaintiff had no property interest in the continuation of the Agreement, and thus no entitlement to procedural due process, where the Agreement expressly provided that either party could decide to not renew the Agreement without cause by giving 60 days' written notice. Defendants also argued that plaintiff could not maintain its § 1983 claim against Northern in the absence of a constitutional violation. Regarding Count III, defendants argued that plaintiff failed to state a claim on which relief could be granted under MCR 2.116(C)(8) because only the state can be liable for money damages arising from a violation of the Michigan Constitution and because plaintiff made no allegations regarding how the individual defendants violated plaintiff's rights under the fair and just treatment clause.

The trial court denied defendants' motion for summary disposition concerning Count II in reliance on *Bundo v Walled Lake*, 395 Mich 679; 238 NW2d 154 (1976), concluding that extrinsic evidence might ultimately show that plaintiff had a property interest protected by due process in the renewal of the Agreement, despite the contractual language suggesting the contrary. In denying defendants' motion for summary disposition under Count III, the court admitted that it was "somewhat puzzled by Count III," and ultimately concluded that the issue had not been appropriately briefed and that it was not clear whether any investigation had taken place such that the fair and just treatment clause could be invoked.

In Case No. 317194, the individual defendants appeal as of right challenging the trial court's denial of their request for qualified immunity from money damages. However, defendants also ask this Court to order that summary disposition be granted regarding Count II in its entirety on the basis that plaintiff's due process argument fails as a matter of law. In Case No. 317211, this Court granted defendants' application for leave to appeal the trial court's ruling on Count III and, on its own motion, consolidated the two appeals. *Traverse Village LLC v Northern Lakes Comm Mental Health*, unpublished order of the Court of Appeals, issued February 25, 2014 (Docket No. 317211).

## II. STANDARD OF REVIEW

We review de novo whether the trial court properly granted or denied summary disposition under MCR 2.116(C)(7) and (C)(8). See *Feyz v Mercy Memorial Hospital*, 475 Mich 663, 672; 719 NW2d 1 (2006). To the extent this case involves questions of contract interpretation and constitutional law, we review those issues de novo as well. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008); *Van Buren v Garter Belt Inc*, 258 Mich App 594, 602; 673 NW2d 111 (2003).

## III. ANALYSIS

### A. DUE PROCESS CLAUSE

The individual defendants argue that the trial court committed error warranting reversal in ruling that they did not have qualified immunity from the alleged due process violation. We agree.

Plaintiff alleges that defendants deprived it of due process in violation of the Fourteenth Amendment of the United States Constitution when they decided to not renew the Agreement. Plaintiff brings this constitutional claim under 42 USC 1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred . . . ." *Baker v McCollan*, 443 U S 137, 144, n 3; 99 S Ct 2689; 61 L Ed 2d 433 (1979). In addition, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v Callahan*, 555 US 223, 231; 129 S Ct 808; 172 L Ed 2d 565 (2009) (citation and quotation marks omitted). In determining whether a government official violated a "clearly established" right, "[t]he contours of the right must be sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v Creighton*, 483 US 635, 640; 107 S Ct 3034; 97 L Ed 2d 523 (1987); see also *Pearson*, 555 US at 243-244.

-4-

We conclude that no factual development could provide a basis for recovery under the due process clause of the Fourteenth Amendment. In *Whispering Pines AFC*, *Home Inc v Dep't of Treasury*, 212 Mich App 545, 550; 538 NW2d 452 (1995), this Court held that "various constitutional rights may be waived by contract with a government agency, even though such constitutional rights are not specified by the language of the contract, if the waiver is clearly embraced within the terms of that contract." The sole limitation on this ability, said the Court, is that the decision "not be the product of fraud or tainted with equivalent bad faith." *Id.* at 551. Here, plaintiff waived any right it might have had to a hearing upon Northern's decision to not renew the Agreement when it unambiguously agreed that Northern could do so (1) "without cause" and (2) by giving 60 days' written notice. Under *Whispering Pines*, 212 Mich App at 550, it matters not whether the Agreement specifically referenced plaintiff's due process rights, and plaintiff's voluntary submission to the 60-day notice procedure plainly foreclosed any entitlement it may have otherwise had to a hearing. Because plaintiff does not allege that the Agreement was the product of fraud or equivalent bad faith, or that it otherwise violates public policy, its unambiguous language must be enforced as written. *Rory v Continental Ins Co*, 473 Mich 457, 491; 703 NW2d 23 (2005).[2]

Having waived any right to additional process beyond the 60-day written notice procedure provided for under the Agreement, plaintiff had no constitutionally protected right to a hearing at which to challenge defendants' reasons for not renewing the Agreement—let alone a clearly established one. Accordingly, we conclude that the trial court erred in denying the individual defendants' motion for summary disposition under MCR 2.116(C)(7). Although defendants ask this Court to venture beyond the qualified immunity issue appealed as of right and order that Count II be dismissed in its entirety, we choose simply to remand for proceedings not inconsistent with this opinion.

### B.    FAIR AND JUST TREATMENT CLAUSE

Next, defendants argue that they are entitled to summary disposition with respect to plaintiff's claim under the fair and just treatment clause of the Michigan Constitution, Const 1963, art 1, § 17; it provides:

---

[2] Although plaintiff correctly asserts that defendants did not raise their waiver argument below, "[t]his Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Nuculovic v Hill*, 287 Mich App 58, 63; 783 NW2d 124 (2010). We conclude that not only is this issue a legal one for which the facts have been sufficiently presented, but that it is necessary for a proper determination of the case. Further, while defendants may not have been specific about their waiver argument below, they did argue that their contractual right to not renew the Agreement without cause upon 60 days' notice should be enforced as written, which is the essence of their waiver argument.

-5-

The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed.

Defendants argue that plaintiff has failed to state a claim on which relief can be granted based on this clause because it failed to allege how defendants treated it unfairly or unjustly during the course of an investigation. We agree.[3]

Plaintiff alleges that defendants treated it unfairly or unjustly by conducting no investigation or a sham investigation before deciding to not renew the Agreement, refusing to explain and present the cause for not renewing, and refusing to hold a hearing at which plaintiff could contest defendants' cause for not renewing. However, the parties' rights and obligations owed to one another were governed by the terms of the Agreement, and plaintiff points to no provision giving defendants an obligation to conduct an investigation, explain its reasons for not renewing, or hold a hearing to allow plaintiff to contest defendants' reasons for not renewing. To the contrary, plaintiff unambiguously agreed that defendants could not renew the Agreement without cause, a hearing, or an investigation, with the nonrenewal requiring nothing more than 60 days' written notice. Accordingly, plaintiff could not have been treated unfairly or unjustly by defendants' decision to not renew the Agreement in accordance with the terms to which plaintiff freely assented.

Moreover, plaintiff alleges that defendants conducted a "sham investigation" at best, but this Court has clarified that an investigation implicating the fair and just treatment clause requires a "searching inquiry" or a "careful examination." *Carmacks Collision*, *Inc v Detroit*, 262 Mich App 207, 211; 684 NW2d 910 (2004). In *Carmacks*, this Court held that a city's bid-selection process for municipal contracts did not "rise to the level of an 'investigation' as that term is properly understood" where the city merely asked for certain information and documentation to judge the bidders' qualifications and the plaintiff voluntarily participated in the information-gathering process by submitting a bid. *Id*. at 211-212. As in *Carmacks*, plaintiff voluntarily participated in defendants' information-gathering process regarding plaintiff's advocacy of its patients by giving defendants written notice of its activities. Further, this Court clarified in *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 40-41; 703 NW2d 822 (2005), that the fair and just treatment clause requires "some active conduct during the 'course of' a hearing or investigation," noting that "the historical context in which this clause was adopted suggests that it was intended to protect against the excesses and abuses of Cold War legislative or executive investigations or hearings." Here, plaintiff does not allege that defendants made any

---

[3] Plaintiff contends that defendants did not properly raise this argument below, but defendants did argue in their motion for summary disposition that plaintiff made no allegations regarding how the individual defendants violated plaintiff's rights under the fair and just treatment clause. Further, we again find that this is a legal issue for which the facts have been sufficiently presented and that its consideration is necessary for a proper determination of the case. *Hill*, 287 Mich App at 63.

"active conduct" towards it during "the course" of whatever fact-gathering process it conducted. At most, plaintiff alleges that defendants are guilty of inaction, by failing to hold a hearing, failing to explain the basis for not renewing the Agreement, and failing to allow plaintiff the opportunity to challenge defendants' basis for not renewing the Agreement. Moreover, temporally, these alleged failures would have occurred after defendants' fact-gathering process, rather than during it. Finally, to the extent plaintiff challenges the adequacy of defendants' fact-gathering process, the plain text of the fair and just treatment clause does not mandate adequate investigations. Const 1963, art 1, § 17. Accordingly, defendants are entitled to summary disposition with respect to plaintiff's claim under the fair and just treatment clause of the Michigan Constitution.[4]

Reversed and remanded for proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ David H. Sawyer
/s/ Patrick M. Meter

---

[4] Having reached this conclusion, we need not address defendants' more limited argument that plaintiff may not maintain a damages claim against them, as individuals or entities that are not "the state," for violating the Michigan Constitution.