# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* REVISIONS TO IMPLEMENTATION OF
PA 299 OF 1972.

---

MICHIGAN ELECTRIC COOPERATIVE
ASSOCIATION,

         Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION,
MICHIGAN CABLE TELECOMMUNICATIONS
ASSOCIATION, MICHIGAN BELL
TELEPHONE COMPANY, FRONTIER NORTH,
INC., FRONTIER MIDSTATES, INC.,
FRONTIER COMMUNICATIONS OF
MICHIGAN, INC., FRONTIER
COMMUNICATIONS ONLINE AND LONG
DISTANCE, INC., FRONTIER
COMMUNICATIONS OF AMERICA, INC.,
TELECOMMUNICATIONS ASSOCIATION OF
MICHIGAN, DCP GRANDS LACS, LLP, DCP
SAGINAW BAY LATERAL, MICHIGAN
LIMITED PARTNERSHIP, JACKSON
PIPELINE COMPANY, CLEAR RATE
COMMUNICATIONS, INC., and CONSUMERS
ENERGY COMPANY,

         Appellees.

UNPUBLISHED
June 7, 2018

No. 337770
MPSC
LC No. 00-018115

---

Before: O'CONNELL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Appellant, the Michigan Electric Cooperative Association (MECA), is a statewide association of electric cooperatives, almost all of whom are member-regulated cooperatives (MRCs). MECA appeals as of right an order entered in March 2017 by appellee, the Michigan Public Service Commission (PSC). The PSC declined to alter the existing method of

-1-

determining the public utility assessment (PUA) for MRCs. Because MECA has not demonstrated that the PSC's order was unlawful, unreasonable, or unconstitutional, we affirm.

## I. BACKGROUND

In 1972, the Legislature passed Public Act 299, MCL 460.111 *et seq*., to create a system for funding the PSC by assessing costs for running the PSC against public utilities regulated by the PSC. MCL 460.112 provides a formula for assessing those costs:

> The department within 30 days after the enactment into law of any appropriation to it, shall ascertain the amount of the appropriation attributable to the regulation of public utilities. This amount shall be assessed against the public utilities and shall be apportioned amongst them as follows: The gross revenue for the preceding calendar year derived from intrastate operations for each public utility shall be totaled and each public utility shall pay a portion of the assessment in the same proportion that its gross revenue for the preceding calendar year derived from intrastate operations bears to such total. Each public utility shall pay a minimum assessment of not less than $50.00.

The PSC may exempt a public utility from assessment "if, after notice and hearing, it determines that gross revenues derived from intrastate operations is not a fair or equitable basis for assessing the costs of regulating that public utility and prescribes a fair and equitable manner for assessing such costs of regulation." MCL 460.118.

After enactment of the Electric Cooperative Member-Regulation Act, MCL 460.31 *et seq*., in 2008, almost all rural electric cooperatives transitioned to member-regulation. At the request of these cooperatives, in 2011, the PSC agreed to reduce MRCs' assessments to 50% of gross revenue (the modified gross revenue approach) because the time and resources used for the PSC's regulation of these cooperatives decreased with member-regulation.

In light of the PSC's shifting workload, the PSC commenced this proceeding in July 2016 to reassess the fairness and equitability of the current allocation of PUAs for an assortment of public utilities. MECA responded that the regulation of MRCs has decreased so dramatically that the PSC's assessment was no longer fair and equitable. MECA suggested that the PSC assess the minimum amount of $50 as provided in MCL 460.112, a flat annual fee based on overall use of PSC resources, or a $10,000 filing fee for a case filed by an MRC in the PSC. Electric cooperative executives testified that the number of cases MRCs brought in the PSC dropped from 47 cases in fiscal year 2010-2011 to six cases in fiscal year 2015-2016 and that all cooperatives will have transitioned to member-regulation by November 2016, thereby making members, not the PSC, responsible for rate regulation. One of the executives testified that the PSC staff could not answer the question of how much time it spent on MRC-related activity, making it impossible to determine whether the regulatory costs charged to MRCs were fair and equitable. He stated that he was not aware of any changes in the PSC's regulatory authority since 2011, when it reduced the costs assessed against MRCs. The executive agreed that the PSC still had certain regulatory oversight responsibilities, including annual reporting requirements for MRCs, and the potential for cases to arise in the future, such as cases related to

an MRC's expansion of territory, electric reliability issues that may require new plants, and stricter federal regulations that may lead to the closing of some electric plants.

The PSC staff countered that their regulatory duties under MCL 460.36(2) justified the current assessment of half of the MRCs' gross revenue. A senior PSC analyst testified that the staff must perform, or stand ready to perform, various regulatory functions. She further stated that the staff did not track its time according to the different types of cases handled. The staff argued that MECA did not provide any empirical support for its position.

The PSC declined to alter the modified gross revenue approach for assessing costs against MRCs because MECA did not show that anything "of note has changed with respect to MRCs" since the PSC adopted the modified gross revenue approach for MRCs in 2011. Noting the PSC's continued regulatory duties under MCL 460.36(2), the PSC found that the current assessment, already representing a 50% reduction, was "a fair and equitable assessment of the costs of regulating the MRCs." MECA now challenges this order.

## II. STANDARD OF REVIEW

The PSC's rates, regulations, practices, and services are presumed lawful and reasonable. MCL 462.25. The party appealing the PSC's order has the burden of proving "by clear and satisfactory evidence that the order . . . is unlawful or unreasonable." MCL 462.26(8). A PSC order is unlawful if "the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. An order is unreasonable if it is not supported by the evidence." *In re Application of Consumers Energy to Increase Electric Rates (On Remand)*, 316 Mich App 231, 236; 891 NW2d 871 (2016) (citation omitted). A PSC order must be "authorized by law[,]" and its findings and conclusions must be "supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28. "Substantial evidence is evidence that a reasoning mind would accept as sufficient to support a conclusion. The [PSC] is entitled to weigh conflicting evidence and opinion testimony in order to determine in which direction the evidence preponderates." *In re Antrim Shale Formation re Operation of Wells Under Vacuum*, 319 Mich App 175, 181; 899 NW2d 799 (2017) (citation and quotation marks omitted).

When we review a PSC order,

> [w]e give due deference to the PSC's administrative expertise and will not substitute our judgment for that of the PSC. We give respectful consideration to the PSC's construction of a statute that the PSC is empowered to execute, and this Court will not overrule that construction absent cogent reasons. If the language of a statute is vague or obscure, the PSC's construction serves as an aid in determining the legislative intent and will be given weight if it does not conflict with the language of the statute or the purpose of the Legislature. However, the construction given to a statute by the PSC is not binding on us. Whether the PSC exceeded the scope of its authority is a question of law that is reviewed de novo. [*Consumers Energy*, 316 Mich App at 237 (citations omitted).]

We also review constitutional challenges de novo. *By Lo Oil Co v Dep't of Treasury,* 267 Mich App 19, 25; 703 NW2d 822 (2005).

## III. DISCUSSION

### A. MCL 460.118

MECA argues that the PSC improperly declined to alter the modified gross revenue approach for assessing costs against MRCs, maintaining that this approach is not fair and equitable under MCL 460.118. We disagree. MECA has not shown that the PSC failed to follow a mandatory statutory provision or that it erroneously applied the statute. The PSC "*may* exempt a public utility" from assessing costs. MCL 460.118 (emphasis added). "The use of the word 'shall' constitutes clear language designating a mandatory course of conduct; whereas, the term 'may' presupposes discretion and does not mandate an action." *In re Weber Estate*, 257 Mich App 558, 562; 669 NW2d 288 (2003) (citation omitted). The PSC is not required to grant an exemption. Rather, the PSC possesses discretionary authority to grant an exemption.

Additionally, nothing in MCL 460.118 mandates that the PSC use the analytical approach advocated by MECA. The text of MCL 460.118 does not confine the PSC to a particular mode of analysis in deciding whether to issue an exemption. Instead, MCL 460.118 sets forth broad principles concerning fairness and equitability, i.e., the PSC may grant an exemption if it determines, after notice and a hearing, that gross revenue is not a fair or equitable basis for assessing the costs of regulation. In this case, the PSC noted that it had already approved a settlement agreement in a prior proceeding that reduced the PUA for MRCs by 50%. The PSC further noted, and MECA agreed, that the PSC maintained regulatory duties and that nothing had changed since 2011. Accordingly, the PSC's analysis does not reflect an erroneous interpretation or application of MCL 460.118.

MECA further argues that the PSC's order is unreasonable because it is not based on competent, material, and substantial evidence on the whole record. MECA's argument is unavailing. As the party aggrieved by the PSC's order, it is MECA's burden to establish that the order is unreasonable. *Consumers Energy*, 316 Mich App at 236. Further, MECA bore the burden below to provide empirical support for its requested reduction of the PUA, as the PSC stated in its order commencing this proceeding. In addition, the PSC marked the status quo as the starting point for its inquiry. As the proponent of an alteration to the existing method of allocating the PUA, the PSC properly assigned to MECA the burden of producing evidence to support its proposal.

MECA presented testimony from an electric cooperative executive stating his opinion that the modified gross revenue approach was not rationally related to the cost of regulating MRCs. The executive relied primarily on the reduced number of cases filed by electric cooperatives in the PSC to support this contention. He admitted, however, that a small percentage of the PSC's resources went to MRCs, MRCs would have contested cases in front of the PSC, and the PSC has "slightly more" regulatory authority over MRCs than municipal utilities (which are not subject to PUAs because they do not fall within MCL 460.111(c)'s definition of a "public utility"). He could not provide any basis for MECA's assessment proposals, testifying that the PSC itself was the best source of information about the cost to the PSC to regulate MRCs and how much time the staff spends on cases involving cooperatives. By contrast, the staff's witness testified about the PSC's remaining regulatory authority over MRCs

and noted that the PSC performs regulatory duties that are not part of a case, including collecting, reviewing, and filing annual reports provided by MRCs.

The status quo, the PSC's starting point, already reflects a 50% reduction in the PUA assigned to MRCs. MECA has not identified any statutory changes to the PSC's regulatory burden that occurred after this reduction. MECA's reliance on the reduced number of case filings is unpersuasive. It is questionable whether the number of cases filed in a single year is a definitive guide to how many cases will be filed in the future because the number of cases has fluctuated since 2010. Even accepting an overall downward trajectory in the number of cases filed by electric cooperatives in light of the advent of member-regulation in 2008, the PSC already acknowledged its reduced regulatory burden by adopting the modified gross revenue approach in 2011. The PSC retains many regulatory responsibilities with respect to MRCs and devotes resources to the performance of regulatory functions that are not part of a filed case. Accordingly, MECA has not demonstrated that a further reduction in the PUA is warranted.

Further, it appears that MECA is implicitly attempting to shift the burden of producing evidence onto the PSC or its staff with respect to the fairness and equitability of the PUA. MECA repeatedly notes that the staff did not know how much time and how many resources were devoted to electric cooperative matters. However, MECA identifies nothing in Act 299 or any other law that requires the PSC or its staff to keep track of how much time is spent regulating each industry or how much time is spent on each individual case. The staff's inability to provide this data did not relieve MECA of its burden to provide empirical support for its alternative fee proposals or for its assertion that the modified gross revenue approach is unfair or inequitable. Indeed, MECA's suggestion of a filing fee fails to account for regulatory costs unassociated with a case, such as the collection, review, and filing of annual reports, and fails to account for cases involving, but not filed by, MRCs. In short, the PSC's order is supported by competent, material, and substantial evidence, and MECA has failed to establish that the PSC's order is unreasonable.

## B. DISTINCT STATEMENT CLAUSE

MECA next argues that the PSC's interpretation and application of MCL 460.118 is unlawful because it violates the Distinct Statement Clause of the Michigan Constitution, Const 1963, art 4, § 32. MECA contends that the PUA for electric cooperatives is not proportionate to the costs of regulating those entities and that the PUA thus constitutes a disguised tax on electric cooperatives that causes Act 299 to violate the Distinct Statement Clause. We disagree.

"Statutes are presumed to be constitutional, and we have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 516; 857 NW2d 529 (2014) (citation and quotation marks omitted). The "burden of proving that a statute is unconstitutional rests with the party challenging it." *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 11; 740 NW2d 444 (2007). The Distinct Statement Clause provides, "Every law which imposes, continues or revives a tax shall distinctly state the tax." Const 1963, art 4, § 32. "The purpose of this provision is to prevent the Legislature from being deceived in regard to any measure for levying taxes, and from furnishing money that might by some indirection be used for objects not approved by the Legislature." *Gillette Commercial Operations North America & Subsidiaries v*

*Dep't of Treasury*, 312 Mich App 394, 447; 878 NW2d 891 (2015) (citation and quotation marks omitted). A violation of the Distinct Statement Clause occurs "if a statute imposes an obscure or deceitful tax, such as when a tax is disguised as a regulatory fee." *People v Cameron*, 319 Mich App 215, 229; 900 NW2d 658 (2017) (citation and quotation marks omitted).

MECA devotes much of its argument on this issue to claiming that the PUA is a tax rather than a fee. This argument is not dispositive of MECA's constitutional claim.[1] Regardless of whether the PUA constitutes a fee or a tax, MECA has not established a violation of the Distinct Statement Clause. The absence of the word "tax" from a statute providing for a tax is not by itself a violation of the Distinct Statement Clause. *Cameron*, 319 Mich App at 231.

Act 299 is not deceptive in stating and fulfilling its purpose. The title and the body of Act 299 make clear that it was intended to raise revenue for the PSC to cover the costs of regulating public utilities. The title of Act 299 states, "AN ACT to provide for the assessment, collection and disposition of the costs of regulation of public utilities." 1972 PA 299. MCL 460.112 states that the amount of the appropriation attributable to the regulation of public utilities shall be apportioned among the public utilities and provides a specific formula for the assessment. Under MCL 460.118, the PSC has the authority to make fair and equitable adjustments to the formula. MCL 460.116 and MCL 460.117 contain procedures for a public utility to challenge an assessment as excessive, erroneous, unlawful, or invalid. MCL 460.115 states that "[a]ll moneys paid into the state treasury by a public utility under this act shall be credited to a special account, to be utilized solely to finance the cost of regulating public utilities." In short, the title and text of Act 299 make plain that it was intended to generate revenue to fund the PSC's regulation of public utilities. MECA has not shown that the Legislature did not intend for Act 299 to raise revenue for the PSC or that the funds generated might, by some indirection, be used for purposes not intended by the Legislature. Therefore, MECA has failed to carry its burden of establishing a violation of the Distinct Statement Clause.

## C. FAIR AND JUST TREATMENT CLAUSE

MECA argues that the PSC acted unlawfully by violating the Fair and Just Treatment Clause, Const 1963, art 1, § 17. MECA contends that it was treated unfairly and unjustly because the PSC failed to base its decision on the proportionate regulatory burden created by each public utility and because it did not identify any evidence to justify the PUA paid by MRCs. MECA's argument lacks merit.

Const 1963, art 1, § 17 states:

> No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. *The right of all individuals, firms, corporations and voluntary associations to fair*

---

[1] MECA's analysis appears to have confused and conflated the test for distinguishing between a tax and a fee with the standard for determining whether a law imposing a tax violates the Distinct Statement Clause.

*and just treatment in the course of legislative and executive investigations and hearings shall not be infringed.* [Emphasis added.]

The "historical context in which [the Fair and Just Treatment Clause] was adopted suggests that it was intended to protect against the excesses and abuses of Cold War legislative or executive investigations or hearings." *By Lo Oil Co*, 267 Mich App at 40. MECA has made no attempt to identify any excesses or abuses even remotely akin to those associated with Cold War investigations or hearings.

In addition, "the "word 'treatment' clearly connotes some active conduct during the 'course of' a hearing or investigation. An administrative agency's interpretation or implementation of a statutory provision can hardly amount to a violation of the 'fair and just treatment' clause simply because plaintiff disagrees with the agency's interpretation or implementation." *Id*. at 41. In this case, MECA fails to articulate any basis on which to conclude that it was treated unfairly or unjustly during the course of an investigation or hearing. MECA's disagreement with the PSC's interpretation or application of Act 299 does not establish a violation of the Fair and Just Treatment Clause. MECA has not shown any violation of this constitutional provision.

In sum, MECA has identified no evidentiary, statutory, or constitutional error in the PSC's order warranting reversal.

We affirm.

/s/ Peter D. O'Connell
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

-7-