*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GLENN BOWLES and KENNETH FRANKS,

      Plaintiffs-Appellants,

v

MICHIGAN COMMISSION ON LAW
ENFORCEMENT STANDARDS and DANNY
ROSA,

      Defendants-Appellees.

UNPUBLISHED
November 16, 2023

No. 362685
Court of Claims
LC No. 22-000027-MZ

Before: HOOD, P.J., and JANSEN and FEENEY, JJ.

PER CURIAM.

Plaintiffs, Glenn Bowles and Kenneth Franks, appeal as of right from a Court of Claims opinion and order granting summary disposition in favor of defendants, the Michigan Commission on Law Enforcement Standards (MCOLES) and Danny Rosa, under MCR 2.116(C)(7), and denying plaintiffs' motion to file an amended complaint. Because defendants were protected by governmental immunity from the tort claims levied against them and any amendment of the complaint would be futile, we affirm.

## I. BACKGROUND

Plaintiffs are law enforcement officers who served as instructors at the Macomb County Police Academy (MCPA) at Macomb Community College (MCC). Following Class #105, several recruits from the Macomb County Sheriff's Office (MCSO) complained that instructors used excessive force, made sexual and sexist comments, and inappropriately touched students during and outside of training exercises. These initial complaints led to the temporary suspension of Bowles. The MCSO and MCC each conducted independent investigations into the allegations. MCOLES is tasked with creating and monitoring police academies in this state. MCOLES Manager of Standards and Compliance, defendant Danny Rosa, also investigated the allegations raised by the recruits. Rosa issued a lengthy report detailing his investigation into the misconduct of four instructors. Rosa concluded Bowles had engaged in excessive force, inappropriate tickling and groin slaps, and placed inordinate focus on small female recruits. Rosa concluded Bowles was

unfit to serve as an MCOLES-approved instructor. Franks, on the other hand, made a few inappropriate comments and was open and honest in his interview. Rosa concluded that Franks could return to instructing after attending sexual harassment training.

After receiving the MCOLES report and completing its own investigation, MCC terminated Bowles's employment and advised Franks he could return to work after attending sexual harassment training, which Franks declined. Before finalizing its decision, MCC conducted a hearing under *Cleveland Bd of Ed v Loudermill*, 470 US 532; 105 S Ct 1487; 84 L Ed 2d 494 (1985), to allow plaintiffs to challenge the grounds for their discipline. Shortly after MCC made its decision, an article appeared in the *Macomb Daily* quoting at length from the MCOLES report.

Bowles initially filed suit in the federal district court for the Eastern District of Michigan, raising a federal due-process claim under 42 USC 1983, and state-law claims of wrongful termination, defamation and libel, and tortious interreference with a contractual relationship against MCC; MCC Vice President of Human Relations Denise Williams; MCOLES; the MCOLES executive director; Rosa; and MCSO Undersheriff Elizabeth Darga. The district court summarily dismissed certain counts and the parties stipulated to the dismissal of others. The last claims in the federal action were resolved in February 2023, and it appears Bowles has not appealed in that proceeding.

While Bowles's federal action was pending, he and Franks filed suit in Macomb Circuit Court. In relevant part, plaintiffs alleged MCOLES tortiously interfered with the collective-bargaining agreement their union entered with MCC, Bowles raised a defamation claim against MCOLES, and Franks raised a defamation claim against Rosa. The crux of plaintiffs' challenges was that defendants exceeded the scope of their authority in conducting an MCOLES investigation not authorized by statute or regulation and used the MCOLES report to unjustifiably encourage MCC to terminate or discipline plaintiffs. The parties stipulated to the transfer of all claims against MCOLES and Rosa to the Court of Claims. The Macomb Circuit Court case was closed in March 2022, for lack of progress on the remaining claims.

Defendants sought summary disposition on governmental immunity grounds in the Court of Claims, while plaintiffs sought to file an amended complaint adding counts that defendants violated the mandate in Const 1963, art 1, § 17 that "[t]he right of all individuals . . . to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed." Defendants challenged the motion to file an amended complaint on the ground that any amendment would be futile and plaintiffs' due-process challenge was already dismissed on the merits in the federal action. Plaintiffs argued at length that MCOLES lacked statutory or regulatory authority to investigate their conduct and could not claim they were engaged in a governmental function or acting within the scope of their authority, negating their right to claim the protection of governmental immunity.

The Court of Claims summarily dismissed plaintiffs' claims on governmental immunity grounds, rejecting plaintiffs' claims that the investigation was not authorized. The Court of Claims also denied plaintiffs' motion to file an amended complaint on futility grounds. In doing so, the court focused on the federal district court's dismissal of Bowles's federal due-process claim. Plaintiffs now appeal as of right.

## II. GOVERNMENTAL IMMUNITY

Under MCR 2.116(C)(7), a court may summarily dismiss a claim when it is barred by governmental immunity.  We review de novo both the summary disposition ruling and the lower court's determination that governmental immunity applies.  *Champine v Dep't of Transp*, 509 Mich 447, 452; 983 NW2d 741 (2022).  "The moving party may support its motion for summary disposition under MCR 2.116(C)(7) with 'affidavits, depositions, admissions, or other documentary evidence,' the substance of which would be admissible at trial.  'The contents of the complaint are accepted as true unless contradicted' by the evidence provided."  *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008), quoting *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999), and MCR 2.116(G).  It is the plaintiff's burden to plead his or her claim in avoidance of governmental immunity.  *In re Bradley Estate*, 494 Mich 367, 377; 835 NW2d 545 (2013).

MCL 691.1407 provides governmental immunity from tort liability under delineated circumstances for government agencies and employees.  The statute states, in relevant part:

> (1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.  Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

> (3) Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986.

> * * *

> (8) As used in this section:

(a) "Gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. [MCL 691.1407(1)-(3), (8)(a).]

A "governmental function" is defined as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(b).

The Michigan Supreme Court provided a checklist to apply when faced with a governmental immunity challenge in *Odom*, 482 Mich at 479-480:

(1) Determine whether the individual is a judge, a legislator, or the highest-ranking appointed executive official at any level of government who is entitled to absolute immunity under MCL 691.1407(5).

(2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.

(3) If the plaintiff pleaded a negligent tort, proceed under MCL 691.1407(2) and determine if the individual caused an injury or damage while acting in the course of employment or service or on behalf of his governmental employer and whether:

(a) the individual was acting or reasonably believed that he was acting within the scope of his authority,

(b) the governmental agency was engaged in the exercise or discharge of a governmental function, and

(c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage.

(4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross*[1] test by showing the following:

(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

(b) the acts were undertaken in good faith, or were not undertaken with malice, and

(c) the acts were discretionary, as opposed to ministerial.

Plaintiffs accused MCOLES, a government agency, of defamation and tortious interference with a contract. As a government agency, MCOLES is entitled to immunity if it was "engaged in

---

[1] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984).

the exercise or discharge of a governmental function," i.e., "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1407(1); MCL 691.1401(b). The Court of Claims correctly determined MCOLES was engaged in a governmental function.

The Michigan Commission on Law Enforcement Standards Act (MCOLESA), MCL 28.601 *et seq.*, created MCOLES "to carry out the intent of this act." MCL 28.603(1). The MCOLESA requires MCOLES to "promulgate rules governing licensing standards and procedures for individuals licensed under this section." MCL 28.609(2). This duty is reiterated in Mich Admin Code, R 28.14211. This includes setting minimal education standards for licensed officers. MCL 28.611(1) permits MCOLES to set up police training academies at colleges and universities and to issue certificates of approval for academies. As part of this duty, MCOLES "may promulgate rules" regarding "[t]he minimum qualifications for instructors for approved agency basic law enforcement training academies, preservice college basic law enforcement training academies, and regional basic law enforcement training academies." MCL 28.611(2)(c).

MCL 28.610 permits MCOLES to investigate alleged violations of the act or the rules promulgated under it:

> (1) [MCOLES] may investigate alleged violations of this act or rules promulgated under this act.
>
> (2) In conducting an investigation, [MCOLES] may hold hearings, administer oaths, issue subpoenas, and order testimony to be taken at a hearing or by deposition. A hearing held under this section shall be conducted in accordance with chapter 4 of the administrative procedures act of 1969, . . . MCL 24.271 to 24.287. A final decision or order issued by [MCOLES] is subject to judicial review as provided in chapter 6 of the administrative procedures act of 1969, . . . MCL 24.301 to 24.306. A petition for judicial review of a final decision or order of [MCOLES] shall be adjudicated only in the court of claims.

Before the enactment of 2016 PA 289, the investigation provisions of MCL 28.610 were located in MCL 28.609c. The new version of MCL 28.609c, in place after 2016, pertains only to fire arson investigators, their training, and licensing requirements. See MCL 28.609c, as enacted by 2016 PA 289, effective January 2, 2017.

The administrative rules promulgated by MCOLES go into great detail about the establishment of police training academies and the training and education necessary to become a licensed officer. Part 6 of the MCOLES regulations pertains to investigations. Mich Admin Code, R 28.14602 promulgated long before 2016, states:

> (1) [MCOLES] may conduct an investigation, or cause an investigation to be conducted, of an alleged violation of the act, these rules, or a provision of [MCOLES's] policies and procedures, published pursuant to R 28.14211 of these rules, by a law enforcement agency, training academy, instructor, or a person.
>
> (2) The investigation shall be consistent with the provisions of MCL 28.609c and these rules. . . .

If, and only if, the investigation could lead to the revocation of a law enforcement officer's license, Mich Admin Code, R 28.14604, Mich Admin Code, R 28.14605, and Mich Admin Code 28.14701 provide for a contested case hearing under the Administrative Procedures Act.

MCOLESA, the administrative code, and MCOLES's policies and procedures sanctioned this investigation. It is MCOLES's duty to open and monitor law enforcement training programs. MCL 28.611. MCL 28.610 authorizes MCOLES to investigate alleged violations of the MCOLESA and rules promulgated under the act. Rule 28.14602(2) does state an investigation must be consistent with MCL 28.609c, and the current language of MCL 28.609c pertains only to arson investigators. However, when Mich Admin Code, R 28.14602 was promulgated, the investigation provisions of MCL 28.610 were found in MCL 28.609c. Because the current language of MCL 28.609c has nothing to do with MCOLES investigations, MCOLES clearly intended to incorporate the language that has since moved. MCOLES should pursue amendment of Mich Admin Code, R 14602(2) to reflect this change. But ultimately, MCOLES was engaged in a governmental function in investigating the allegations against plaintiffs and was entitled to governmental immunity from the tortious interference claims alleged against it by plaintiffs.

The defamation claims against MCOLES go beyond the investigation and are based on the materials released and statements made to the *Macomb Daily*. Governmental immunity is extended in these circumstances under *American Transmissions, Inc v Attorney General*, 454 Mich 135; 560 NW2d 50 (1997). In *American Transmission*, Attorney General Frank Kelley conducted a sting operation of independent transmission shops stemming from concerns raised by General Motors that some of these shops were performing unnecessary work to profit from a federal consent order that required the automaker to cover repair costs connected with certain defective transmissions. *Id.* at 136. Kelley released the results of the operation in 1986. *Id.* However, General Motors' involvement in the investigation was not revealed until five years later in a *Detroit News* article. *Id*. at 136. Kelley made several statements about the investigation when interviewed by a reporter, including that American Transmissions acted fraudulently. *Id.* at 137. American Transmissions filed a defamation action against Attorney General Kelley. *Id*. The Michigan Supreme Court held that the Attorney General was immune from liability:

> In this case, the Attorney General allegedly defamed the plaintiffs during a 1991 television interview that concerned an earlier fraud investigation conducted by his department. Doubts had been expressed regarding the propriety of the department's conduct, and Mr. Kelley was responding to questions regarding the investigation. On these facts, the Attorney General clearly is "immune from tort liability" because he was "acting within the scope of [his] executive authority." [*Id.* at 144.]

Here, MCOLES, through its agent Rosa, responded to a request for information and comment from a reporter about an investigation conducted within MCOLES's governmental function. Governmental immunity protected MCOLES from tort liability for defamation and the Court of Claims correctly granted summary disposition in defendants' favor.

The Court of Claims also properly granted summary disposition in Rosa's favor on governmental immunity grounds. As a government employee, Rosa's right to protection is governed by MCL 691.1407(2), rather than subsection (1). As described in *Odom*, 482 Mich

at 479-480, the immunity conferred on governmental employees depends on whether the tort alleged is intentional or negligent. Franks accused Rosa of defamation. Defamation can be either an intentional or negligent tort. See *Kevorkian v American Med Ass'n*, 237 Mich App 1, 8-9; 602 NW2d 233 (1999) (stating the elements of defamation include "fault amounting at least to negligence"). Rosa was entitled to governmental immunity either way.

In relation to a negligent tort, a defendant is entitled to governmental immunity if he (a) "was acting or reasonably believed that he was acting within the scope of his authority," (b) "was engaged in the exercise or discharge of a governmental function," and (c) his conduct was not grossly negligent. *Odom*, 482 Mich at 480; MCL 691.1407(2).

As explained above, Rosa was engaged in a governmental function in conducting his investigation and in answering questions posed by the *Macomb Daily*. Accordingly, the second element of the governmental immunity test is satisfied. Similarly, Rosa was acting within the scope of his authority. As manager of the MCOLES Standards and Compliance Section, Rosa was tasked with investigating alleged violations of MCOLES's standards, policies, procedures, laws, and regulations. When the MCSO and MCC brought the allegations of alleged sexual harassment and impropriety to MCOLES's attention, it was Rosa's job to investigate, prepare a report, and make recommendations, which he did. Moreover, as contemplated in *American Transmissions*, 454 Mich at 144, Rosa acted within the scope of his authority in answering questions posed by the media regarding this investigation.

Franks's allegations do not rise to the necessary level of "gross negligence." Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Xu v Gay*, 257 Mich App 263, 269; 668 NW2d 166 (2003) (quotation marks and citation omitted). Evidence of ordinary negligence is insufficient to meet this standard, *Maiden*, 461 Mich at 122-123; a plaintiff must plead and establish conduct that is "substantially more than negligent," *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 411; 716 NW2d 236 (2006).

> [G]ross negligence . . . suggests . . . almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004).]

Franks points to ¶ 35 of the complaint where he alleged: "The allegations contained in the summary attributing sexual harassment to Franks are false and Franks vehemently denies them" as supporting a claim of gross negligence. This conclusory statement does nothing of the sort. Just because a person denies an allegation against him does not mean the person who investigated and decided it was true acted with any level of negligence. In ¶ 58, Franks alleged: "MCOLES and Jane Doe published the libelous statements with actual malice and with a reckless disregard for the truth, including the false, negative and defamatory statement that Franks is 'salvageable' by Defendant and MCOLES employee Danny Rosa." Absent a showing the MCOLES investigation was conducted with malice or with reckless disregard for the truth, the statements supported by the evidence uncovered during that investigation could not be the result of gross

negligence. Accordingly, Rosa is entitled to governmental immunity against a claim of negligent defamation.

To support governmental immunity for an intentional tort of defamation: (1) the defendant's acts must have been taken in the course of his employment and within the scope of his authority, (2) the acts must have been taken in good faith and without malice, and (3) the acts must have been discretionary. *Odom*, 482 Mich at 480. As discussed, Rosa was acting in the course of his employment and within the scope of his authority. Franks does not challenge that Rosa's actions were discretionary; Rosa had significant leeway in conducting his investigation, drafting his report, and making his recommendations. Contrary to Franks's assertions, there is no allegation, let alone supporting evidence, that Rosa did not act with good faith. Plaintiffs posit in the complaint the MCOLES investigation was started by MCSO Undersheriff Darga as part of a vendetta against Bowles. However, MCOLES conducted its investigation completely separate from MCSO. Plaintiffs incorrectly argue MCOLES and Rosa lacked authority to investigate and question some of the investigation techniques. However, Franks never alleged Rosa purposely engaged in improper investigation techniques for a nefarious purpose.

On this record, the Court of Claims correctly determined Rosa was entitled to governmental immunity and summarily dismissed Franks's defamation claim against him.

## III. AMENDED COMPLAINT

Plaintiffs also challenge the Court of Claims' denial of their motion to file an amended complaint. Although we do not agree with the Court of Claims' reasoning, that court reached the right result. We review for an abuse of discretion a lower court's resolution of a motion for leave to file an amended complaint. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 215-216; 859 NW2d 238 (2014). A court abuses its discretion when it reaches a decision "outside the range of principled outcomes." *Jilek v Stockson*, 297 Mich App 663, 665; 825 NW2d 358 (2012) (quotation marks and citation omitted).

MCR 2.118(A)(1) permits a party to file an amended complaint without permission within 14 days after the pleading is served. Beyond that point, MCR 2.118(A)(2) states: "[A] party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires." "Leave to amend should be denied only for particularized reasons, such as undue delay, bad faith or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party, or where amendment would be futile." *Miller v Chapman Contracting*, 477 Mich 102, 105; 730 NW2d 462 (2007).

> An amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face. A proposed amendment is also futile if summary disposition would be appropriately granted regarding the new claims, either when a party has not established a genuine issue of material fact regarding an element, or when the undisputed facts establish that summary disposition would be appropriate. [*Zwiker v Lake Superior State Univ*, 340 Mich App 448, 484; 986 NW2d 427 (2022) (quotation marks and citations omitted).]

-8-

Plaintiffs sought to add allegations that the MCOLES investigation violated Const 1963, art 1, § 17, which provides, in relevant part, that all persons have a "right . . . to fair and just treatment in the course of legislative and executive investigations." The Court of Claims reasoned the Michigan and United States Due Process Clauses are coextensive and because the federal district court already determined Bowles did not have an actionable due-process claim, the proposed amendment would be futile. As a general rule: "The due process guarantee of the Michigan Constitution is coextensive with its federal counterpart." *Grimes v Van Hook-Williams*, 302 Mich App 521, 530; 839 NW2d 237 (2013). Plaintiffs contend the fair-and-just-treatment provision is not coextensive with the federal Due Process Clause because it is language above and beyond that included in the federal Constitution. We agree, but still find amendment would be futile.

When interpreting a constitutional provision, our "primary objective . . . is to determine the text's original meaning to the ratifiers, the people, at the time of ratification." *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 39; 703 NW2d 822 (2005) (quotation marks and citation omitted). "A collateral rule is that to clarify meaning, the circumstances surrounding the adoption of a constitutional provision and the purpose sought to be accomplished may be considered." *Id*. at 40 (quotation marks and citations omitted).

In *By Lo Oil Co*, *id*. at 40, this Court held: "The plain text conveys that the protection of 'fair and just treatment' applies only 'in the course of,' or 'during,' either a 'legislative' or 'executive' 'investigation' or 'hearing.' " There must be "active conduct" by an entity toward an investigation. *Id*. at 41. This Court continued: "[T]he historical context in which this clause was adopted suggests that it was intended to protect against the excesses and abuses of Cold War legislative or executive investigations or hearings." *Id*. at 40. This Court further explained that history in *Jo-Dan, Ltd v Detroit Bd of Ed*, unpublished per curiam opinion of the Court of Appeals, issued July 14, 2000 (Docket No. 201406), p 10[2]: "[W]e cannot forget that the Constitution of 1963 is a product of those unique times in which certain legislative investigations and hearings, notably those aimed at identifying 'subversives,' negatively affected citizens even in the absence of proof that they actually committed any illegal conduct." The fair-and-just-treatment provision "was intended to provide a substantive and forceful right to the people to counteract such abuses if and when they occur." *Id*. at 11.

The best analysis of this constitutional language comes from an unpublished criminal opinion. In *People v Kelley*, unpublished opinion per curiam of the Court of Appeals, issued August 27, 2013 (Docket No. 309677), p 4, a criminal defendant contended the police violated her right to "fair and just treatment in the course of" an investigation. Regarding the fair-and-just-treatment provision, this Court explained:

The convention comment explains the fair and just treatment clause by stating:

---

[2] "Unpublished decisions are not binding on this Court, but the Court may consider them for their persuasive value." *People v Otto*, ___ Mich App ___, ___ n 11; ___ NW2d ___ (2023) (Docket No. 362161), slip op at 12 n 11.

> [t]he second sentence incorporates a new guarantee of fair and just treatment in legislative and executive investigations. This recognizes the extent to which such investigations have tended to assume a quasi-judicial character.
>
> The language proposed in the second sentence does not impose categorically the guarantees of procedural due process upon such investigations. Instead, it leaves to the Legislature, the Executive and finally to the courts, the task of developing fair rules of procedure appropriate to such investigations. It does, however, guarantee fair and just treatment in such matters. [*Id*. at 5, quoting 2 Official Record, Constitutional Convention 1961, p 3364.]

The defendant "argue[d] that she should have had an opportunity to tell her side of the story to investigators." *Kelley*, unpub op at 5. This Court disagreed, stating:

> [T]he convention comment specifically states that the fair and just clause does not categorically impose the guarantees of procedural due process on executive investigations. Therefore, we decline to read into the fair and just treatment clause of Const 1963, art 1, § 17 specific guarantees of the manner in which a police agency conducts an investigation. Indeed, we do believe that the common understanding of most ordinary people at the time of the ratification of our Constitution would have been to read this provision as applying to ordinary police investigations, i.e., so many other specific constitutional protections, not to mention the Due Process Clause, protect individual liberty and guarantee a person accused of a crime a fair trial by a jury of the accused's peers. [*Id*.]

In *By Lo Oil Co*, 267 Mich App at 41, this Court "doubt[ed]" the protections extended to "a run-of-the-mill tax audit." *Kelley* held it does not apply to a police investigation of a crime. *Kelley*, unpub op at 5. The case before us involves something beyond a regular police investigation or tax audit; it is an investigation conducted by an executive agency tasked with overseeing certain police functions. Accordingly, the fair-and-just-treatment provision applies and requires a different analysis than a typical due-process challenge.

What we can take from these opinions is that a heightened standard of fair and just treatment is required, but that the Constitution does not dictate what that looks like. Here, MCOLES engaged in a lengthy and extensive investigation. Rosa interviewed 36 recruits and the four instructors accused of wrongdoing. Although Bowles complains Rosa did not permit him to present evidence, Rosa accepted the instructors' explanations of events. Further, as previously discussed, the MCOLES investigation was conducted consistent with the MCOLESA and relevant administrative code provisions, guides created to ensure that fair and just investigations were conducted. Accordingly, amendment would have been futile.[3]

---

[3] The parties raise extensive alternative arguments to support or challenge the Court of Claims' rulings. Given our resolution of the issues, we need not consider those arguments.

Affirmed.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kathleen A. Feeney